14 CV 680 (WFK)(PK)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHAEL WALKER,

Plaintiff,

- against –

THE CITY OF NEW YORK, POLICE OFFICER GREGORY GORDON [Shield No. Unknown] and POLICE OFFICER MICHAEL SMITH [Shield No. Unknown]in their individual and official capacities as Police Officers employed by the City of New York,

Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

ANDREW F. PLASSE
Attorney for the Plaintiff
Office and P.O. Address
163-07 Depot Road, Suite 205
Flushing, NY 11358
(212) 695-5811

# TABLE OF CONTENTS

TABLE OF AUTHORITIES           i-iii

BURDEN OF PROOF         1

ARGUMENT

    I.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE
        EXCESSIVE USE OF FORCE CLAIM UNDER THE FOURTH AMENDMENT    1

    A.    QUESTION OF FACT EXISTS AS TO WHETHER MICHAEL WALKER WAS
        IN POSSESSION OF A WEAPON AND/OR THREATENED DEFENDANTS WITH
        A WEAPON    1

    II.    PLAINTIFF'S CAUSE OF ACTION FOR EXCESSIVE FORCE IS NOT
        COLLATERALLY ESTOPPED BY VIRTUE OF HIS CRIMINAL CONVICTION    11

    III.    PLAINTIFF IS NOT BARRED FROM CLAIMING THAT HE WAS UNARMED
        BY HECK V. HUMPHREY    14

    IV.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY    15

    V.    PLAINTIFF'S TESTIMONY IS NOT INCONSISTENT WITH HIS DNA EVIDENCE    19

    VI.    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR
        NON LETHAL EXCESSIVE FORCE SHOULD BE DENIED    22

    VII.    DEFENDANTS' MOTION TO DISMISS NEGLIGENCE CLAIM    23

CONCLUSION    23

TABLE OF AUTHORITIES

<u>Cases</u>

<u>Allen v. McCurry,</u>
449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)     11

<u>Amnesty America v. Town of West Hartford,</u>
361 F.3d 113, 124 (2nd Cir. 2004)     2

<u>Anderson v. Liberty Lobby, Inc.,</u>
477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986)     1

<u>Anderson v. Creighton,</u>
482 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987)     15

<u>Beyer v. County of Nassau,</u>
524 F.3d 160, 163 (2nd Cir. 2008)     15, 16

<u>Biggs v. City of New York,</u>
2010 U.S. Dist. LEXIS 121332, 2010 WL 4628360 at 3,
N. 7 (S.D.N.Y. 2010)     14

<u>Bolden v. Village of Monticello,</u>
344 F. Supp. 2d 407, (S.D.N.Y. 2004)     2

<u>Breitkopf v. Gentile,</u>
41 F. Supp. 3d 220 at 243 (E.D.N.Y. 2014)     4

<u>Byrnie v. Town of Cromwell, Bd. of Educ.,</u>
243 F.3d 93, 101 (2nd Cir. 2001)     1

<u>Cornejo v. Bell,</u>
592 F.3d 121, 128 (2nd Cir. 2010)     15

<u>Cowan v. Breen,</u>
352 F.3d 756, 764 (2nd Cir. 2003)     15

<u>Graham v. Connor,</u>
490 U.S. 386, 109 S. Ct. 1865 (1979)     1, 2

<u>Heck v. Humphrey,</u>
512 U.S. 477, 114 S.Ct. 2364 (1994)     14

Illinois v. Gates,
462 U.S. 213, 2013 S.Ct. 2317 (1983)                                    19

Kerman v. City of New York,
261 F.3d 229 at 238, 239 (2nd Cir. 2001)                                 1

Maxwell v. City of New York,
380 F.3d 106 at 108 (2004)                                               3

McCrory v. Belden,
2003 WL 22271192 (S.D.N.Y. 2003)                                         11,12

New York v. Julius Nasso Concrete Corp.,
202 F.3d 82, 86 (2d Cir.2000)                                            11

NLRB v. Thalbo Corp.,
171 F.3d 102, 109 (2d Cir.1999)                                          11

Robison v. Via,
821 F. 2d 913, (2d Cir. 1987)                                            3

Russo v. DiMilia,
894 F.Supp.2d 391, (S.D.N.Y. 2012)                                       11, 14

Sagendorf-Teal v. County of Rensselaer,
100 F.3d 270 (2nd Cir. 1996)                                             9

Salahuddin v. Goord,
467 F. 3d 263, 273 (2nd Cir. 2006)                                       1

Salim v. Proulx,
93 F. 3d 86, 92 (2nd Cir. 1006)                                          16

Scott v. Harris,
550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007)                           1

Sullivan v. Gagnier,
225 F.3d 161, 166 (2d Cir.2000)                                          12, 13

Tennessee v. Garner,
471 U.S. 1, 105 S.Ct. 1694 (1985)                                        2, 4, 15

Tracy v. Freshwater,
623 F.3d 90 at 99, 100 (2nd Cir. 2010)                              11

United States v. Torres,
845 F.2d 1165 (2nd Cir. 1988)                                       9


Statutes

Fed. R. Civ. P. 56(c)                                              15

NY. Penal Law Section 35.30(1)(c)                                  2

NY. Penal Law Section 110                                         13

## BURDEN OF PROOF FOR SUMMARY JUDGMENT

Summary Judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the burden is satisfied, "the burden shits to the nonmovant to point to record evidence creating a genuine issue of material fact. Salahuddin v. Goord, 467 F. 3d 263, 273 (2nd Cir. 2006). The party opposing summary judgment "cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2nd Cir. 2001).

## I. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE EXCESSIVE USE OF FORCE CLAIM UNDER THE FOURTH AMENDMENT

a. Question of Fact exists as to whether Michael Walker was in possession of a weapon and/or threatened the Defendants with a weapon

"All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard . . ." Kerman v. City of New York, 261 F.3d 229 at 238, 239 (2nd Cir. 2001) citing Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865 (1979). To establish a constitutional violation, plaintiff must meet the objective reasonableness standard under the Fourth Amendment. This requires a 'careful balancing of the nature and quality of the instruction on the individual's Fourth Amendment interests against the

countervailing balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests at stake. Graham v. Connor, supra., at. 386, 394, 395, 396. (T)he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Graham, supra. at 396.

The objective reasonableness test states that an officer may use deadly force to apprehend a suspect, if he has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694 (1985).

Under New York State law, an officer effecting an arrest may use deadly force if the officer reasonably believes that deadly physical force is necessary to defend the police office or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force. NY. Penal Law Section 35.30(1)(c).

However, Officers may not gratuitously inflict pain in a manner that is not a reasonable response to the circumstances. Amnesty America v. Town of West Hartford, 361 F.3d 113, 124 (2nd Cir. 2004). The use of force beyond what is reasonably necessary to prevent violence . . . violates the Fourth Amendment. Bolden v. Village of Monticello, 344 F. Supp. 2d 407, (S.D.N.Y. 2004)

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, supra., at 397. Although 'not every push or shove, even if may later seem unnecessary in the peace of a judge's chambers. . . violates the Fourth Amendment, we have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her

arm, 'yanked her, and threw her up against a car, causing only bruising. (Citations omitted) Maxwell v. City of New York, 380 F.3d 106 at 108 (2004).

Plaintiff alleges that both defendants' conduct was an unconstitutional excessive use of force. Given the facts and circumstances leading up to the incident, the police officers' actions were "objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Maxwell v. City of New York, supra., at 108.

There are two components of the Plaintiff's excessive force claim. The first is that he was shot while unarmed. The second component alleges that after he was shot, while on the ground, he was repeatedly beaten by the Police sustaining injuries in addition to his gunshot wound. (Ex. A Walker EBT at P.59-66, P 74-76, P 80-83; Ex. B Par. 1-19; Ex C. Plea Allocution Michael Walker, P. 2 Lines 18-25; P. 4 Lines 11-13; P. 11 Lines 14-25; P. 12 Lines 14- 25, P. 13 Lines 1-2.; Ex D Affidavit of Taylor Bivings Pars 1-13).

The second component of the claim for excessive force, i.e., Walker 's claims that he was kicked after he was shot, that he was brutally assaulted, hit in his head, is clearly sufficient to overcome summary judgment on the excessive force claim. Robison v. Via, 821 F. 2d 913, (2d Cir. 1987). He alleged that after he was shot, while in handcuffs, police officers injured him when he was in police custody. (Ex. A Walker EBT P. 90-92) These allegations are also sufficient to defeat defendant's motion for Summary Judgment.

There is also a question of fact as to the first component of the excessive force claim, where Plaintiff alleges defendants Gregory and Smith used excessive force in shooting him,

With respect to deadly force, an officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant

threat of death or serious injury to the officer or others. <u>Tennessee v. Garner, supra.</u>, at 11; <u>Breitkopf v. Gentile</u>, 41 F. Supp. 3d 220 at 243 (E.D.N.Y. 2014).

The objective reasonableness test will not be met if on an objective basis, it is obvious that no reasonably competent officer would have concluded in that moment that . . . use of deadly force was necessary. <u>Breitkopf, supra</u> at 243.

There exist questions of fact as to whether Michael Walker was in possession of a Firearm and pointed it at Gregory and Smith. Walker categorically denies armed. (Ex B Walker Affidavit Par 5, 18, 19; Ex C Plea Allocution Michael Walker, P. 2 Lines 18-25; P. 4 Lines 11-13; P. 11 Lines 14-25; P. 12 Lines 14-25, P. 13 Lines 1-2.; Ex D Affidavit of Taylor Bivings Pars 1-13.

During his Examination Before Trial held on December 8, 2016, Walker testified as follows:

Q. So you saw two guys get out of the car and you saw their guns?

A. Yeah.

Q. Did they get away from the car before you started running or they were just getting out?

A. They was getting out with guns drawn on me like they wanted to kill me so I basically just took off.

(Ex A Walker EBT P. 59 Lines 17-24)

Q. What were they saying when they got out of the car?

A. "Get over here, Nigger." Something like that. "Don't you make a move." So when you saying something like that to me I'm gonna - - I'm getting out of there , with guns pointed at my face.

(Ex A Walker EBT P. 61 Lines 6-12)

Q. So what's the first thing you can recall after feeling the bullet hit?

A. Pain

(Ex A Walker EBT P. 80 Lines 7-9)

Q. And in what position were you lying, face up, face down, side?

A. Face down. As soon as I got shot I fell right on my face.

(Ex A Walker EBT P. 80 Lines 20-23)

Q. So when you fell, were you able to break your fall with your hands?

A. Yeah.

Q. And once you were down on the ground then did you hear the officers do or say anything?

A. Yeah.

Q. What did you hear?

A. As soon as I fell on the floor, the officer came up and said - - with the flashlight, this is how I really knew they were cops cause I seen flashlights. This when I knew they was cops when they had they flashlights out with their guns pointed at me, just like the movies. The guns like this and the flashlight and he said "Put our hands up, Nigger. Put your hands up, Nigger." And kicked me in my face and told me this is my day.

(Ex A Walker EBT P. 81 Lines 5-18)

Q. And the same officer kicked you in the face twice?

A. They took chances - - turns on me. One cop kicked me then the other cop came over and

(Ex A Walker EBT P. 82 lines 22-25)

kicked me.

(Ex A Walker EBT P. 83 Line 1)

In his affidavit, Michael Walker states that he never had a gun in his possession during this incident. (Ex B Michael Walker Affidavit Par 8)

Taylor Bivings, a non-party eyewitness, whose statement to the NYPD and Affidavit state he did not see Michael Walker with a gun while he was running up the street toward and past him. (Ex D Taylor Bivings Affidavit Pars. 5-13)

Comparing that to the testimony of both Defendants, Officer Smith testified as follows during his Examination Before Trial held on June 20, 2017:

Q. What were they doing, if anything?

A. They were standing right on the corner at that point. I noticed the CI based off his clothing description, what he was wearing. We turned the lights on the vehicle, exited the vehicle.

(Ex J Smith EBT P. 17, Lines 6-12)

Q. What happened next after you got out of the car?

A. We identified ourselves, "police, don't move," as soon as we approached the sidewalk the CI in the Bulls threw his hands up right away and the other subject pulled the black firearm from his waist and started to pursue (sic) down the sidewalk.

(Ex J Smith EBT P. 18 Lines 16-24)

Q. When you specifically stated he pulled it from his waits, can you describe exactly what he did?

A. Black firearm right form his waist with his hand.

Q. Did he use his left hand, right hand?

A. I don't recall. I believe it was his right hand.

Q. Did that black firearm remain exposed after he took it out?

A. Yes.

Q. What did he do after taking out, specifically?

A. The gun was pointed directly at me. I drew my firearm, he fled down the sidewalk, I pursued after him.

(Ex J Smith EBT P. 19 Lines 6-22)

Gregory Gordon testified as follows during his Examination Before Trial held on June 27, 2017:

Q. All right. From the time that you arrived at that intersection in your unmarked police car until the time that Michael Walker started to run northbound on the east sidewalk, did you observe whether or not he had any weapons on him?

A. Yes I did

Q. What, if anything, did you see?

A. I observed him pull what

(Ex K Gordon EBT P 19 Lines 17-25)

A. appeared to be a black firearm from his waistband in his right hand.

A non-party witness, Taylor Bivings stated that he was present during the incident. He stated that he observed a male running across the street from him on the sidewalk as well as the Defendant point a weapon at the man on the sidewalk and fire his weapon. He did not see a weapon on the male running on the sidewalk across the street from him. He did not know who that person was, but the man across the sidewalk was the plaintiff. A nonparty witness did not see the plaintiff with a weapon. (Ex D Taylor Bivings Affidavit)

This nonparty witness' name was provided by the defendants during disclosure. His statement was in the defendants' possession. His information was otherwise made known to the defendants during the discovery process because the defendants had his information in writing. He was referred to in the Police Reports. (Ex. E) . His testimony that he did not see the plaintiff with a weapon presents an issue of fact in this matter.

On the pivotal and threshold issue of whether the plaintiff was in possession of a firearm, perhaps justifying the use of force, there is a question of fact which needs to be resolved. Walker denies possession. (Ex. B Pars 18, 19; Ex C Plea Allocution Michael Walker, P. 2 Lines 18-25; P. 4 Lines 11-13; P. 11 Lines 14-25; P. 12 Lines 14- 25, P. 13 Lines 1-2).

The defendants version of events raises some credibility issues. According to defendants, upon getting out of the car, the plaintiff displayed a weapon. After displaying the weapon, he then turned to run. The question is why a person in illegal possession of a weapon would, upon being stopped by Police Officers, take the weapon out to show it to the Officers approaching him. I am troubled by this testimony. Wouldn't it be more likely for the plaintiff, if he really was in possession of the weapon, not to demonstrate to two or possibly more Police Officers that he had one.

There are clearly are questions of fact on this threshold issue of whether the plaintiff was armed based on the testimony of the parties, and a nonparty, and for this reason alone, the motion for Summary Judgment must be denied.

b. Question of Fact exists as to the Reliability of the Confidential Informant.

The Confidential Informant not only had an extensive criminal history involving use of Firearms but was facing three concurrent felony convictions in New York at the time this incident took place. It is arguable that the CI set up the plaintiff to avoid prison time. The CI

knew who Michael Walker was from years ago. (Ex. A EBT Michael Walker P. 45-49) Michael

Walker once dated his cousin. (Ex. A EBT Michael Walker Lines P. 45 17-25) For two weeks

prior to the incident, Walker was speaking to the CI on the phone or in person. (Ex. A. EBT

Michael Walker P. 46 Lines 9-23). They arranged to meet on the date of the incident for Super

Bowl Sunday. (Ex. A. EBT Michael Walker P. 46 Lines 24-25, P. 47 Lines 1-8) Just this passing

familiarity would be sufficient for him to know Michael Walker's prior criminal history. The CI

targeted him up as a mark for a felony gun charge on the date of this incident. This could be a

two pronged victory for the CI: (1) It would feather his nest with the Richmond County DA and

(2) would take his target Michael Walker off the streets for a dozen years.

  This Court's prior Orders precluded the identification of the Confidential Informant.

Defendants argued that the CI was not physically present when the plaintiff was shot. However,

not only was the CI present during the moment when both Defendants allege they saw plaintiff

with a weapon, but he was also allegedly the informing witness who claimed he knew Walker

was about to commit a home invasion, (Ex. J EBT Officer Smith Pp. 12-14) even though

Michael was on his way to his sister's house. A missing witness charge would permit a jury to

infer that the CI's testimony would be adverse to the Defendants' version of events. Sagendorf-

Teal v. County of Rensselaer, 100 F.3d 270 (2nd Cir. 1996); United States v. Torres, 845 F.2d

1165 (2nd Cir. 1988). The Defendants have access to the CI. The plaintiff does not. Given the

possibility that the CI set up the Plaintiff for a weapons charge, this Court may infer that the

failure of an Affidavit from the CI means that his testimony would not support the defendants

version of events.

  According to documents provided during discovery in this case, (Ex H – Plea and

Cooperation Agreement of the Confidential Informant), information about the Confidential

Informant was provided to plaintiff's defense counsel on the date of his plea. The Confidential Informant had a criminal history consisting of convicted of Armed Kidnapping in Massachusetts (January 28, 2008); conviction of Illegal Possession of a Firearm, in Massachusetts (January 28, 2008); conviction of Firearm Carry without Ammunition in Massachusetts (August 5, 2010); conviction of Grand Larceny Fourth Degree and one count of Criminal Possession of Stolen Property in the Fifth Degree in Richmond County (April 2013); conviction of Grand Larceny in the Fourth Degree and one count of Unauthorized Use of a Vehicle in the third Degree (April 2013); entered into a cooperation agreement with the Richmond County DA (April 2013); convicted of Burglary in the Third Degree, Attempted Grand Larceny in the Third Degree, and Attempted Grand Larceny in the Fourth Degree in violation of his Plea agreement in April 2013 (October 2013). (Ex. H – Plea and Cooperation Agreement.

Additional evidence indicates that it is just as likely as the gun found at the scene of the incident belonged to the CI as it did to the plaintiff. A FOIL response by NYCOCME attached hereto as Exhibit "G" is an email comparing the swab from the trigger and trigger guard with the DNA of the Confidential Informant. The conclusion is that he can or cannot be excluded as a contributor to the mixture. It is just as probable that the CI DNA is on the weapon as it isn't.

Why should anyone believe that the CI was telling the truth about Michael Walker possessing a weapon and about to commit a home invasion if he has a conviction history of gun possession crimes, armed kidnapping and his DNA is just as likely on the gun involved in this case as it isn't? He certainly has a motive to lie to get favorable treatment from the Staten Island District Attorney. He even got the plaintiff to go to Staten Island with him despite the plaintiff's residence in another county.

Isn't it more likely that the CI set up Michael Walker with a gun possession charge so that he could skate home free from three pending felony convictions in this State? Would that not be an impetus for him to lie? Why is it likely that his DNA was on the weapon as well? Based on this DNA evidence in Exhibit "G" there is clearly a question of fact as to whether Michael Walker ever was in possession of a weapon and clearly a question of fact as to whether the Confidential Informant framed Michael Walker.

### II. PLAINTIFF'S CAUSE OF ACTION FOR EXCESSIVE FORCE IS NOT COLLATERALLY ESTOPPED BY VIRTUE OF HIS CRIMINAL CONVICTION.

There is no question that a prior state-court criminal conviction may estop a plaintiff from asserting a claim under federal law if, in the course of the criminal proceeding, a required element of the civil claim was necessarily decided adversely to the plaintiff. Allen v. McCurry, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Tracy v. Freshwater, 623 F.3d 90 at 99, 100 (2nd Cir. 2010); New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir.2000); Russo v. DiMilia, 894 F.Supp.2d 391, (S.D.N.Y. 2012); McCrory v. Belden, 2003 WL 22271192 (S.D.N.Y. 2003)

Since the prior adjudication of plaintiff was by a New York State court, we look to the law of New York to determine its collateral estoppel effects. McCrory v. Belden, supra., citing Allen, 449 U.S. at 96.

Under New York law, collateral estoppel will apply if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." McCrory, supra., citing Julius Nasso Concrete Corp., supra at 86 (quoting NLRB v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir.1999).

11

The party invoking collateral estoppel bears the burden of demonstrating that one or more of the issues in the prior and current proceeding were identical and that those issues were actually and necessarily litigated and decided in the prior proceeding. McCrory v. Belden, supra, citing, Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir.2000).

In this case, plaintiff's plea allocution on July 21, 2014 established only that on February 2, 2013 plaintiff attempted to posses a criminal weapon in the second degree, that is, that he attempted to possess a loaded firearm and that such possession did not take place in his home or place of business. (Ex C. Plea Allocution Michael Walker, P. 2 Lines 18-25; P. 4 Lines 11-13; P. 11 Lines 14-25; P. 12 Lines 14- 25, P. 13 Lines 1-2).

Michael Walker specifically states during his plea: "My thing is this. I don't understand how somebody who wasn't armed with a weapon, I didn't have the weapon at the time, at any time that they say I had a weapon. I got shot in the back."

(Ex C Plea Allocution Page 2, Lines 18-22)

Specifically it was the intent of the Defense Lawyer and the Court that his plea to an attempt would not have any collateral estoppel effect on this case.

"Mr. Fonte: I will put on the record this only effect this. It doesn't affect any civil rights case or lawsuit that he has pending with regards to this indictment.

The Court: I think that's right. I mean it wouldn't have any bearing on any collateral matters."

(Ex C Plea Allocution Page 8, Lines 5-11)

Plaintiff's conviction only established that on February 2, 2013  he attempted to possess a weapon.  It says nothing about possessing a weapon at the time of his arrest. It does not state if

the weapon was pointed at a police officer. A plea to an attempted possession of a weapon is not necessarily inconsistent with a claim here for excessive force.

A criminal attempt occurs when a person with intent to commit a crime "engages in conduct which tends to effect, the commission of such crime." N.Y. Penal L. § 110.00.

The established facts do not preclude the assertion of plaintiff's excessive-force claim. Nor does the conviction preclude plaintiff from offering evidence that the defendants employed excessive force after his arrest.

The fact that a person whom a police officer attempts to arrest resists arrest it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. Therefore, there is no inherent conflict between a conviction for attempted possession of a weapon and a finding that the police officers used excessive force afterwards in effectuating the arrest.

A claim of excessive force is not precluded by the plaintiff's prior convictions for attempted possession of a weapon unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit. The doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits. The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion. Sullivan v. Gagnier, supra., (2nd Cir. 2000).

Defendants failed to meet this burden. The plea allocution is clear that the plaintiff did not admit possessing a weapon at the exact time of this incident.

This same argument also applies to Defendants' argument that plaintiff is precluded under the doctrine of "judicial estoppel" from claiming that he was armed. Defense counsel has totally twisted and taken the entire plea allocution out of context. There is nothing in the allocation by the plaintiff that he was in possession of a weapon. Counsel's assertion that the plea allocution contradicts his deposition testimony is totally erroneous.

Based on the foregoing, it is respectfully submitted that Defendants' Motion to Dismiss on the basis of Collateral Estoppel be denied.

### III. PLAINTIFF IS NOT BARRED FROM CLAIMING THAT HE WAS UNARMED BY HECK V. HUMPHREY

Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994) does not bar the plaintiff from claiming he was unarmed. Counsel again misinterprets the plea allocution. The Plaintiff was convicted of attempted possession of a weapon. Plaintiff's allegation that he was unarmed when he was the victim of alleged excessive force is not inconsistent with his conviction. Plaintiff's claim of excessive force in this proceeding does not require overturning his conviction for attempted criminal possession of a weapon. The excessive force claim does not bear the requisite relationship to plaintiff's conviction for attempted possession of a weapon in the second degree. "Under federal law, a police officer is authorized to use deadly force if the suspect threatens the officer with a weapon or poses a threat of serious physical harm. . ." Biggs v. City of New York, 2010 U.S. Dist. LEXIS 121332,2010 WL 4628360 at 3, N. 7 (S.D.N.Y. 2010).

For the foregoing reasons, a reasonable jury could find that the shooting of plaintiff by Gregory and Smith was an excessive use of force, despite his conviction for attempted criminal possession of a weapon. Russo v. DiMilia, supra., at 407.

## IV. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The standard for Qualified Immunity is whether the defendants' actions were objectively reasonable. Anderson v. Creighton, 482 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). Qualified Immunity is sufficient to shield defendants from civil liability under Section 1983 if it was objectivity reasonable for them to believe that their acts did not violate clearly established rights. Cornejo v. Bell, 592 F.3d 121, 128 (2nd Circ. 2010).

This standard is exactly the same as the standard used in determining an excessive force claim under the Fourth Amendment, which was set forth at length in Part II above.

If plaintiff's allegations are found to be true by the finders of fact, i.e., that the defendants used excessive force in shooting at an unarmed man, and then assaulted and battered him on the ground after he was wounded, then clearly those actions are not subject to qualified immunity.

Since the issue of determining whether the Officers conduct was objectively reasonable involves the determination of material facts in dispute, as set forth above, defendants are not entitled to summary judgment on the issue of qualified immunity.

The central issue in a Fourth Amendment claim for excessive force is whether in the particular circumstances face by the officer, a reasonable officer would believe that the force employed would be lawful. Cowan v. Breen, 352 F.3d 756, 764 (2nd Cir. 2003).

In order for it to be objectively reasonable for an officer to use deadly force to apprehend a suspect, he must have probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Tennessee v. Garner, supra. at 3, 11.

Summary Judgment on this issue, is only warranted when the moving party shows that there is no Genuine Issue as to any Material Fact. Fed. R. Civ. P. 56(c). A genuine issue of fact exists where a reasonable juror could find in the non-movant's favor. Beyer v. County of

Nassau, 524 F.3d 160, 163 (2nd Cir. 2008). In deciding this motion, the court must resolve all ambiguities and factual inferences that could rationally be drawn in favor of the party opposing summary judgment.

Here the plaintiff's sworn testimony under oath, that he did not have a weapon when the police approached him, that he ran down the street and was shot in the back, together with that of an eyewitness who did not see him with a weapon, (Ex. A Walker EBT at P.59-66, P 74-76, P 80-83; Ex. B Par. 1-19; Ex C. Plea Allocution Michael Walker, P. 2 Lines 18-25; P. 4 Lines 11-13; P. 11 Lines 14-25; P. 12 Lines 14- 25, P. 13 Lines 1-2.; Ex D Affidavit of Taylor Bivings Pars 1-13) clearly creates an issue of genuine fact as to whether the defendants had an objective good faith belief that he was armed, permitting them to use force and shoot an unarmed man. Given these facts, as set forth by the plaintiff, and viewing the evidence in the light most favorable to Plaintiff, there are clearly material factual disputes on this case which bear on whether the defendants use of force in firing their weapons was objectively reasonable under the circumstances.

Defense counsel argues that the court's inquiry into this matter should be limited to "the officer's knowledge of the circumstances immediately prior to and at the moment he made the split second decision to employ deadly force." Salim v. Proulx, 93 F. 3d 86, 92 (2nd Cir. 1006). The Defendants may be taking the position that testimony or texting from an unidentified Confidential Informant should be taken into consideration as to the intent or objective reasonableness of the Officers' subsequent conduct. However neither Officer knew who the Confidential Informant was. Both defendants had no prior knowledge of the veracity of the Confidential Informant, which could be the basis for an objective reasonable belief that the plaintiff was armed.

16

Defendant Gordon testified as follows:

Q. Why did you go to that location?

MR. SCHEINER: Objection to form.

Q. You can answer that.

A. Okay. We received information regarding an individual with a firearm

(Ex. K Gordon EBT P. 11, Lines 18-25)

Q. How did you receive that information?

MR. SCHEINER: Objection to form.

Q. You can still answer that question.

A. Okay.

MR. SCHEINER: If you understand the question, you could answer.

A. How did I receive it? I don't understand.

Q. All right. What information, if any, did you receive that led you to the intersection of Charles Avenue and Treadwell.?

A. My partner, Michael Smith, informed me that he received a phone call regarding a man with a firearm.

(Ex. K Gordon EBT P. 12 Lines 1-20)

Gordon's knowledge of the CI is based on a hearsay statement. Therefore there is no evidence that prior to arriving at the intersection of Charles and Treadwell, that Officer Smith could have an objectively reasonable belief that plaintiff was armed.

Defendant Smith testified as follows:

Q. Did there come a time you were made aware that Michael Walker was in the vicinity of I think's it's Treadwell and Charles Avenue?

A. Yes.

MR. SCHEINER: Objection to form.

Q. How were you made aware of that?

A. I was made aware by contact.

MR. SCHEINER: Objection to form.

A. By contact with the criminal informant.

(Ex. J Smith EBT P. 12 Lines 1-20)

Q. In what manner were you contacted by the confidential informant?

A. Telephone, cell phone.

Q. Was that audio or some other manner?

A. It was audio and text.

Q. Without revealing the name of the confidential informant, how is it that he got in contact with your telephone?

A. He originally tried contacting his handler which is the FIO. The severity of his situation led him to call the 120 Detective Squad. Where he gave the CI number to identify himself, he spoke with Detective Dinkle (phonetic) of the 120 Detective Squad. Detective Dinkle then called me because he knew I was out on the field and put me in contact with the CI.

Q. So the CI, he was a registered CI?

A. Yes he was.

(Ex. J. Smith EBT P. 13 Lines 5-25)

Q. Did you know who the CI was prior to this date?

A. No, I did not.

(Ex. J Smith EBT P. 14 Lines 21-23)

Smith had no knowledge of the CI's reliability or past conduct. Thus he cannot claim an objective reasonable belief in the hearsay information he received.

Courts must assess whether an informant's tip establishes reasonable suspicion under the totality of the circumstances approach as articulated in <u>Illinois v. Gates</u>, 462 U.S. 213, 2013 S.Ct. 2317 (1983). Neither Officer Smith nor Gordon knew the Confidential Informant, what his past history was, his reliability, or any other indicia of his reliability. To claim Qualified Immunity on the basis of a CI who was not known to them, had a history of criminal conduct, and had a reason to fabricate his tip, should not be permitted. The crux of this case revolves around whether at the time the Officers first met the plaintiff, whether he was armed or not. This remains a question of fact. Under these circumstances, it cannot be said that their conduct was objectively reasonable.

For all of those reasons, Summary Judgment on the Qualified Immunity Claim must be denied.

## V. PLAINTIFF'S TESTIMONY IS NOT INCONSISTENT WITH THE DNA EVIDENCE

Plaintiff's counsel hired a consultant to perform DNA analysis in this case. Dr. Lawrence Kobilinsky, Ph.D. initially reviewed the DNA evidence in this case. At one point during discovery, defendants provided redacted DNA testing of the Confidential Informant, over two hundred pages of analysis which required an expert to review. The purpose of which was to see whether or not the Confidential Informant's DNA was on the weapon allegedly found near the plaintiff. He was not able to perform the analysis because the defendant or OCME had redacted the information of the CI making the testing impossible. With the Court Order of July 27, 2017, denying plaintiff the opportunity to depose the CI, the issue of withdrawing the redactions to the DNA testing of the CI seemed moot. Therefore despite having actually retained a witness to

review evidence in this file, plaintiff's counsel was hamstrung by Court Orders which literally prevented him from processing evidence that was probative of the issues in this case.

Pursuant to a FOIL request for an email from the OCME to the RDA, a response was provided to counsel on or about June 15, 2017. A copy of the response is attached as Exhibit G. The response stated that the Confidential Informant's DNA was tested from the trigger and trigger guard, and no conclusions could be made, meaning that it was just as likely that the CI's DNA could not be excluded or existed as a contributor to the mixture.

At a Court Conference held on July 27, 2017, a copy of which is attached hereto as Exhibit L, counsel for the defense asked on Page 37, Lines 20-25 whether plaintiff had any experts. Plaintiff's counsel responded on Page 38 Lines 1-3 that there was a DNA expert, but he was not sure how useful the expert would be. The Court requested that the conversation be held between the parties. At that point, however, for proving the prima facie case, the expert was not needed.

Defendants' motion for the first time to my knowledge, makes the argument that the testimony of the plaintiff is inconsistent with the DNA evidence. To rebut this argument, it now becomes necessary for the first time, to have my consultant reply as an expert in this case, not to prove the plaintiff's prima facie case, but to rebut the allegation in the motion that plaintiff's testimony is inconsistent with the DNA evidence.

Defense counsel cites that the ratio, or value of "14,200 times more like" is as conclusive as medical evidence that plaintiff's DNA is on the weapon. Defense counsel further cites that the finding of DNA on the weapon is contrary to his plea allocution.

As set forth supra., plaintiff's testimony in his deposition and statements, are not inconsistent with his plea for an Attempted Possession of a Weapon. Further plaintiff never

testified in his plea that he was in possession of a weapon. The plea allocution is actually quite troubling since there is no actual allocation by the plaintiff to a crime. Instead the Court and defense attorney make out the elements.

The affidavit of Dr. Kobilinsky (Ex. F ) is submitted not to demonstrate the plaintiff's prima facie case. Plaintiff has testified that he was unarmed when shot. The affidavit is intended to rebut the argument set forth by defense counsel that the value of "14,200 times more likely" is a scientific certainty that the plaintiff touched the weapon. Defendants do not submit an expert's affidavit in support of this proposition. Plaintiff is not submitting an affidavit by an expert that disputes his own prior sworn testimony. Dr. Kobilinsky has not previously provided an expert report or been designated as an expert, but it has been brought to defense counsel's knowledge that a consultant did review the DNA testing in this case. The purpose of this affidavit is solely to rebut the defendants' opinion in their Memorandum of Law. The defendants' opinion is not based on any expert witness opinion. Dr. Kobilinsky opinion is that the value or ratio of "14,200 times more likely" is only a statistical likelihood and not a scientific certainty that plaintiff's DNA was on the weapon, meaning that the DNA evidence defendants cite is not evidence proving the plaintiff's DNA was on the weapon.

In this case, which has been bi-furcated pursuant to the Court's Order of July 27, 2017, separating the excessive force from the Monell claim, discovery has technically not been concluded as the Monell Claim is outstanding. Under Rule 26, courts will not admit supplemental expert evidence following the close of discovery if it expounds a wholly new and complete approach designed to fill a significant and logical gap. Here Dr. Kobilinsky opinion was not needed for the plaintiff's prima facie case. It is, however necessary to rebut the defendants' assertions, made without any supporting evidence, that the DNA found on the

weapon is a scientific fact demonstrating an inconsistency with the plaintiff's statement, when in fact it is only a probability. Having said all that, if the Court was not to consider Dr. Kobilinsky's opinion on probability, then it shouldn't in all fairness consider the Defendants' position that the DNA evidence here is admissible without the defendant having an expert opinion to back up his assertion. Secondly, due to the procedural position of this case, technically discovery is not closed since the case is bi-furcated. Accordingly, plaintiff requests that the expert opinion attached as Exhibit "F" be admissible for the purpose of this motion solely to rebut the defendants' position.

## VI. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR NON LETHAL EXCESSIVE FORCE SHOULD BE DENIED

Plaintiff's hospital records (Ex I – Hospital Records) indicate a gunshot wound to upper back, performance of a thoracotomy, an evacuation of a hematoma, and that he was admitted to Intensive Care. Given the severity of the situation, the gunshot wound would be the recorded injury upon admission. Injuries from kicks and punches may not have been visible or if visible secondary trauma to the gunshot wound. The plaintiff testified that he was kicked and punched after he was shot and arrested and verbally abused as well. (Ex A. EBT Walker P. 81-83, P. 90-92) Given the plaintiff's testimony, there is a question of fact as to whether the arresting officers used excessive force on a severely wounded arrestee in their custody. This portion of the motion must be denied.

## VII. DEFENDANTS' MOTION TO DISMISS MONELL CLAIM MUST BE DENIED

The Defendants sought and obtained an Order bifurcating the Monell claim from the Excessive Force Claim on the basis that it would be unduly burdensome for the defendant to comply with the Discovery Demands. The Court, can take judicial notice, that it granted this

request to bifurcate on July 27, 2017. Despite appealing this Order, the District Judge affirmed the bi-furcation. Consequently no discovery was conducted on the Monell Claim. Discovery on the Monell claim is contingent upon an award in plaintiff's favor on the excessive force claim.

Since the claim is bi-furcated, it is plaintiff's position that the defendants Motion is premature and/or moot.

## VIII.  DEFENDANTS' MOTION
## TO DISMISS NEGLIGENCE CLAIM

Plaintiff does not object to dismissal of the third cause of action against the individual defendants that they negligently discharged their firearm.

Plaintiff does not object to the dismissal of the negligence claim against the City of New York.

## CONCLUSION

**WHEREFORE**  it is respectfully submitted that Defendants Motion for Summary Judgment, specifically that plaintiff is collaterally estopped from proceeding in this action, that defendants did not violate his Fourth Amendment rights, and that the defendants are entitled to Qualified Immunity be denied, that the request to dismiss the excessive force claim and assault and battery claims be denied, that the Monell Portion of the Motion be held in abeyance pending completion of Monell Discovery, that all other portions of this motion be denied, (except as to the negligence claims against the Defendants which plaintiff stipulates to dismiss), together with such other and further relief as to this Court seems just and  proper

DATED:      October 2, 2018
            Flushing, New York

ANDREW F. PLASSE

23