UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL WALKER

        Plaintiff;

v.

THE CITY OF NEW YORK, GREGORY GORDON, and MICHAEL SMITH

        Defendants.

14-cv-680 (NRM) (PK)

TRIAL MANAGEMENT ORDER

NINA R. MORRISON, United States District Judge:

**TRIAL MANAGEMENT ORDER**

      At a hearing held on December 19, 2022, the Court heard oral argument on Defendants' Motions to Preclude various evidence and witnesses at trial. At that time, the Court ruled on certain matters, reserved decision on others, and held a preliminary discussion with the parties regarding various motions *in limine* which are likely to be presented to the Court prior to or at trial. The Court also granted the parties leave to conduct additional depositions on or before February 20, 2023 and to revise certain expert disclosures, and directed them to confer regarding whether Defendants' outstanding motions may be moot or otherwise modified at that time. Since the hearing, the parties have also filed letter briefs raising additional matters, including a motion by defense counsel to be relieved of the Court's request that he make certain inquiries relevant to one of the parties' disputed evidentiary issues, and a recent request by Plaintiff for an order compelling production of additional materials.

      Now that a firm trial date has been set for May 8, 2023, the Court issues this Trial Management Order to address these outstanding matters.

**I.**     **Disputes Related to the Production and Admissibility of Defendant Gordon's Facebook Postings**

      Plaintiff Walker, who is Black, filed this action in 2014, in which he alleged, *inter alia*, that Defendant officers used excessive force in effectuating a stop against

1

him in 2013 by shooting Plaintiff in the back while he was unarmed; he further alleges that the Defendant officers kicked him and used a racial slur against him after he was shot and laying on the ground. The City of New York is also a defendant in this action, in light of Plaintiff's state-law assault and battery claim as well as his (presently stayed) *Monell* claim.

Over two years after the lawsuit was filed, in 2016, the New York *Daily News* ran a front-page article reporting on what the newspaper characterized as a series of "racist rants" posted by Defendant Gregory Gordon on his personal Facebook page; this initial report was followed by a series of other articles regarding Defendant Gordon's postings and the public responses to them by the New York Police Department and other City officials. The articles quoted and/or reprinted images from a series of social media postings apparently authored by Defendant Gordon which were cited as evidencing extreme race-based animus on the part of Defendant Gordon towards Black Americans, people of Arab or Muslim descent, and others.[1]

After the articles' publication, the NYPD brought disciplinary charges against Defendant Gordon, and he ultimately pled guilty to "wrongfully post[ing] disparaging, inflammatory, or otherwise inappropriate statements on his personal Facebook social media page" arising from seven (7) separate postings. Plaintiff ultimately obtained a copy of the disciplinary decision arising from the Facebook postings as well as a partially-redacted summary of Defendant Gordon's complete NYPD disciplinary history through Freedom of Information Law Requests, as well as an earlier, inadvertent production by the New York City Law Department. However, he has previously sought, and continues to seek from this Court, an order compelling the City of New York to produce the complete disciplinary file of Defendant Gordon that led to these substantiated charges, including but not limited to copies of any of the Defendant Gordon's original Facebook postings or messages, to the extent they remain in the NYPD's possession.

Although Plaintiff has unsuccessfully made at least two prior motions to compel production of this material, he argues that the potential significance of this

---

[1] *See* Graham Rayman, Ryan Sit, & Stephen Rex Brown, *NYPD Detective on Staten Island Posts Racist Rants on Facebook Slamming Chirlane McCray, Bill Bratton; Department Says It's Reviewing the Matter*, NEW YORK DAILY NEWS (July 28, 2016, 4:41 PM), https://www.nydailynews.com/new-york/nyc-crime/nypd-detective-staten-island-posts-racist-rants-facebook-article-1.2730010; Aidan McLaughlin & Graham Rayman, *Bratton Slams Staten Island Cop for Racist Facebook Rants, Says Detective Must Return His Medals*, NEW YORK DAILY NEWS (Aug. 2, 2016), https://www.nydailynews.com/new-york/bratton-slams-staten-island-racist-facebook-rants-article-1.2734560.

evidence to Plaintiff's case, the minimal burden on the City to produce the material, and an ensuing change in law regarding the discoverability of such disciplinary records merit reconsideration of the prior denials. Although Defendants have not yet responded to Plaintiff's latest request for production of these materials, defense counsel has already moved to preclude Plaintiff from using any of Defendant Gordon's disciplinary records at trial, including those related to these Facebook postings, and has argued that the underlying postings/statements are themselves inadmissible for any purpose because they constitute inadmissible character evidence and would unduly prejudice Defendant Gordon.

The Court does not lightly revisit a discovery dispute previously considered by other judges of this Court. Initially, on July 27, 2017, Magistrate Judge Kuo, ruling from the bench, denied Plaintiff's discovery request to access Defendant Gordon's Facebook account for the purpose of acquiring Facebook posts which Defendant Gordon may have deleted after they were reported in the media. In that hearing, defense counsel appears to have represented that, because Defendant Gordon had deleted many of his postings, the only means to acquire all of Defendant Gordon's Facebook posts would be to contact Facebook and request them on his behalf. Magistrate Judge Kuo based her decision in significant part on the "great burden to have to go to Facebook and try to get posts that were deleted." On March 30, 2018, Judge Kuntz affirmed Magistrate Judge Kuo's original decision, concluding that Magistrate Judge Kuo "balanced the great burden posed to Gordon—having to go to Facebook and get posts that were deleted and are not readily available—against the Plaintiff's need for this information." On July 9, 2020, Plaintiff moved to reopen discovery in light of the repeal of N.Y. Civ. R.L. § 50-a, which Magistrate Judge Kuo denied on July 20, 2020.

It is now clear from the record, however, that Defendant Gordon was subjected to departmental disciplinary proceedings for various statements that he posted on Facebook and that he pled guilty to charges arising from seven of those postings (though it is unclear from the present record whether additional charges were sought based on other postings, or what universe of material the NYPD possessed when deciding which charges to bring). For that reason, the Court is concerned that Judges Kuo and Kuntz may have entered their previous discovery orders based on an incomplete record—namely, that Defendant City of New York, through one of its agencies, actually possesses copies of the complete Facebook posts that led to Defendant Gordon's disciplinary proceedings and for which discovery would not, in fact, require subpoenaing or otherwise contacting Facebook.

In addition, although N.Y. Civ. R.L. § 50-a had already been repealed when Plaintiff made his last motion to compel before Magistrate Judge Kuo, Plaintiff's most recent letter brief to this Court cites various cases decided after that time regarding the obligations of City officials to provide complete disciplinary records

and other materials in the wake of 50-a's repeal. While those cases are in the very different context of pretrial criminal discovery, it appears that Plaintiff is arguing that they have persuasive weight on how the balance should be struck by courts presiding over disputes in federal civil proceedings concerning those same materials. Furthermore, the Court may *sua sponte* reconsider "any order or other decision, however designated, that adjudicates . . . the rights and liabilities of fewer than all the parties . . . at any time before the entry of judgment." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, 11-cv-3238, 2015 WL 545565, at *2 (S.D.N.Y. February 9, 2015) (quoting Fed. R. Civ. P. 54(b)).

In order to efficiently and fairly resolve the parties' remaining disputes regarding the production and admissibility of these postings, the Court orders the following:

1. Defense counsel shall inquire of the New York Police Department whether it possesses (1) any Facebook postings or other Facebook records from Defendant Gordon's account (including, but not limited to, the seven postings that resulted in substantiated disciplinary charges against him), and (2) any other records from that NYPD disciplinary proceeding, including but not limited to a transcript of the proceedings or any memoranda or statements submitted by or on behalf of Defendant Gordon.

2. On or before January 27, 2023, defense counsel shall file a letter (1) setting forth the result of the above inquiry, and (2) stating whether Defendants consent to produce unredacted (or redacted) copies of the materials located, if they exist. In so ordering, the Court underscores that whether or not Defendants consent to produce these records, they do not waive any objections to the admissibility of the records at trial for any purpose. To the extent that Defendants agree to produce certain materials with redactions, or wish to have them produced under protective order, the Court urges the parties to first meet and confer regarding Defendants' proposed redactions.

3. To the extent that Defendants do not agree to produce any of the materials located in response to the inquiry above, Defendants shall file a letter brief stating the grounds for their opposition on or before February 6, 2023. Defendants shall also provide the Court with an *in camera* copy of any such materials whose production they oppose. Plaintiff shall file a responsive letter brief, if any, on or before February 13, 2023.

4. On or before February 21, 2023, Defendants shall also file their motion *in limine* to exclude Plaintiff from (1) cross-examining Defendant Gordon about or otherwise introducing into evidence at trial any of the statements he made

4

on Facebook that were the subject of his NYPD disciplinary proceeding(s) or otherwise publicly reported, and (2) cross-examining Defendant Gordon about or otherwise introducing into evidence at trial the substantiated disciplinary charges against Defendant Gordon arising from these Facebook postings. Plaintiff shall file his response on or before March 3, 2023; Defendants shall file their reply, if any, on or before March 10, 2023. In their papers, the parties shall brief the admissibility of this evidence both as to liability and as to damages, as well as (if applicable) the admissibility of such evidence as it may relate to Defendant Gordon's anticipated defense of qualified immunity.[2] To the extent that, at the time the parties brief this issue, there remain additional Facebook postings or disciplinary records whose production the Court has not yet ruled upon but ultimately orders produced, the Court will

---

[2] The Court notes that Defendants have also filed a Motion to Reconsider what defense counsel characterizes as an "order" issued by this Court at the hearing held on December 19, 2022. As reflected in the hearing transcript, at that time, in the context of a broader discussion regarding the potential inadmissibility of the Facebook-posting evidence (1) the Court noted the likelihood that, given the highly-publicized nature of the Facebook postings by Defendant Gordon, various state court judges may well have considered and ruled upon the admissibility of these Facebook postings in criminal cases in which defendants sought to use the postings to impeach his credibility or otherwise, and (2) recognizing that these other courts' consideration of this sensitive issue may aid or otherwise inform this Court's resolution of same, the Court asked defense counsel to inquire of his contacts in the District Attorney's offices for the boroughs in which Defendant Gordon worked as a detective from 2016 onwards whether they had centrally maintained copies, or were otherwise already aware of, any such decisions, including ones in which courts may have ruled from the bench. While defense counsel did not object to this request at the hearing, counsel thereafter filed a letter brief vigorously challenging the Court's authority to "order" the Law Department to make such an inquiry of a third-party governmental entity.

Given that the Court's modest request was grounded in part in its desire to give Defendant Gordon the benefit of any unpublished rulings that might have been in his favor—but would be neither controlling authority nor necessary to its resolution of this issue—the Court will not expend any of its own or the parties' resources adjudicating the question of whether, under these or other circumstances, the Court does in fact have the authority to direct counsel to make such an inquiry. To that end, defense counsel need not make the inquiry that the Court requested. Certainly, however, to the extent defense counsel elects to make that inquiry and wishes to provide the Court with copies of any decisions on this issue in the possession of any of the City's District Attorneys, it is certainly free to do so. Similarly, if Plaintiff's counsel obtains such decisions from the criminal defense bar, the District Attorneys' Offices, or otherwise, he is free to provide them to the Court for consideration.

thereafter give the parties leave to file supplemental briefs or otherwise argue their positions with respect to any subsequently-produced materials.

II. **Defendants' Outstanding Motions to Preclude and Other Disciplinary Files**

1. On or before February 28, 2023, defense counsel shall file a letter brief indicating whether any of the Motions to Preclude that were the subject of the December 19, 2022 hearing remain outstanding, or whether the parties were able to resolve their disputes regarding the admissibility of these witnesses and/or evidence.

2. In that same February 28, 2023 submission, defense counsel shall further indicate whether, in the wake of the repeal of N.Y. Civ. R.L. § 50-a, it has agreed to Plaintiff's request for production of the remainder of Defendant Gordon's complete disciplinary files (*i.e.,* all disciplinary actions that do not relate to the Facebook postings set forth above, to the extent that Plaintiff does not already possess unredacted copies of such materials). The Court notes, again, in agreeing to production of some or all of these materials, Defendants do not waive any objection to their admissibility at trial.

3. If Defendants do not agree to produce the complete files, they shall file a written opposition to production of any materials they oppose and explain the bases for their opposition on or before March 3, 2023. Plaintiff shall file its reply on or before March 10, 2023.

4. To the extent that any of Defendants' other previously-filed Motions to Preclude remain outstanding, Defendants may file any additional arguments or authorities regarding those issues that it wishes the Court to consider on or before March 3, 2023. Plaintiff may file a supplemental response on or before March 10, 2023.

III. **Conferences and Other Pretrial Filings**

The Court will hold a telephone status hearing with the parties on **March 8, 2023 at 2:00pm**. At that conference, the Court will confer with the parties regarding the schedule for other pretrial matters, including but not limited to a

deadline for the filing of a final Joint Pretrial Order and a briefing schedule on the parties' other motions *in limine*.