UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL WALKER

                    Plaintiff,

          v.

THE CITY OF NEW YORK, GREGORY
GORDON, and MICHAEL SMITH

                    Defendants.

14-cv-680 (NRM) (PK)

**MEMORANDUM AND ORDER**

NINA R. MORRISON, United States District Judge:

On June 28, 2023, this Court *sua sponte* directed Andrew Plasse, Esq., former counsel for Plaintiff in this 42 U.S.C. § 1983 action, to show cause why he should not be sanctioned under Federal Rule of Civil Procedure 11 ("Rule 11") and the Court's inherent power for his conduct in proceedings relating to stipulations of settlement that he and counsel for Defendants entered into on April 18, 2023 and filed with this Court on April 19, 2023.  Order to Show Cause ("OTSC"), ECF No. 205.[1]  That settlement was vacated by the Court under Federal Rule of Civil Procedure 60(b)(6) on May 31, 2023, at which time Plaintiff also discharged Mr. Plasse as his counsel. Minute Entry and Order dated May 31, 2023; Tr. dated May 31, 2023 ("May 31 Tr.") at 4:1–10; 36:16–24, ECF No. 204.

Upon review of Mr. Plasse's written Response to the Order to Show Cause and accompanying exhibits, Response to Order to Show Cause ("Response to OTSC"), ECF

---

[1] All page references use ECF pagination except where noted.

No. 212, as well as the full record of these proceedings and the applicable law, this Court concludes that an order for monetary sanctions against Mr. Plasse pursuant to Rule 11 should issue.

The sanctions relate to Mr. Plasse's knowing submission to the Court of two written requests—an email dated May 3, 2023, seeking relief in what Mr. Plasse represented were urgent circumstances, and a letter filed on the docket on May 5, 2023, memorializing his earlier email request—both of which were made in bad faith.

In both submissions, Mr. Plasse represented to the Court that a writ earlier entered for his incarcerated client's in-person appearance at a court conference to discuss the parties' anticipated settlement was depriving Plaintiff of essential mental health treatment at the state prison facility where he was being held in anticipation of that court date and urged the Court to vacate the writ so that Plaintiff "could be sent to an appropriate facility for the treatment that he currently needs[.]"  Letter dated May 3 ("May 3 Letter") at 1, ECF No. 205-1.  This was false.  Indeed, just two days before Mr. Plasse made these representations to the Court, Plaintiff had been evaluated by prison medical staff and was found to need *no* such intensive mental health treatment.  Plaintiff's transfer to the facility where he was housed on May 3, 2023, was a routine transfer after he had been medically cleared and was entirely unrelated to this Court's writ.

The Court concludes that these statements violate Rule 11(b)(3) because Mr. Plasse did not have any basis to believe they were true at the time they were made.  Nor did he indicate to the Court (as Rule 11(b)(3) requires) that at the time he made these statements, he needed to conduct further investigation or obtain additional

2

information about Plaintiff's status to verify any assertions he believed were likely true.  Instead, Mr. Plasse sought (and obtained) an immediate order from this Court cancelling his client's appearance on knowingly false pretenses.  And he did so while repeatedly and deliberately concealing from his own client the fact that this Court had issued an order providing for Plaintiff's appearance.  In light of this history, as well as Mr. Plasse's own prior disciplinary history, the Court concludes that Rule 11 sanctions are appropriate.

The Court further finds that Mr. Plasse violated his basic professional obligations by entering into the stipulations of settlement on Plaintiff's behalf without (1) informing Plaintiff of even an approximate amount of costs and disbursements incurred during Mr. Plasse's nine-year representation that would be deducted from the settlement proceeds, or (2) conducting any research into whether Plaintiff—who required surgery and other intensive care at a City hospital following the events that gave rise to this lawsuit—might have some or all of his settlement proceeds subject to a Medicaid or other lien, and failing to advise Plaintiff of the settlement provisions that specifically contemplated that possibility.  The Court concludes, however, that sanctions are not necessary to remediate this misconduct, in part because the underlying settlement has since been vacated and Plaintiff has retained new counsel.  Accordingly, while the Court has the authority to impose additional sanctions pursuant to its inherent power, it declines to do so here.

The specific findings and conclusions by the Court that warrant the above conclusions are set forth more fully below.

## I.    Factual and Procedural Background

The above-captioned action was filed by Plaintiff Michael Walker, through his then-counsel Andrew Plasse, Esq., on January 31, 2014.  Compl., ECF No. 1.  In his lawsuit, Plaintiff asserts, *inter alia*, that Defendant New York Police Department officers Gregory Gordon and Michael Smith violated his right to be free from excessive force on the evening of February 2, 2013, when they encountered him on a street in Staten Island and shot him.  *Id.* at 3.  Plaintiff alleges that he was unarmed at the time he was shot, and that Defendants used racial epithets against him and physically assaulted him while he was on the ground after the shooting.  *See* Opp'n to Mot. for Summ. J. at 8–11, ECF No. 85.  Defendants deny these allegations and maintain that they shot Plaintiff, whom they claim was armed, in self-defense.  Mot. for Summ. J. at 16–19, ECF No. 82-1.

The case proceeded through discovery and motion practice for over nine years.  On October 17, 2022, the case was reassigned to the undersigned.  Order dated Oct. 17, 2022.  At the time of the reassignment, the docket included pending motions by Defendants to preclude substantial portions of the Plaintiff's anticipated trial evidence because, according to Defendants, Plaintiff's then-counsel, Mr. Plasse, had repeatedly failed to comply with his basic disclosure obligations.  For example, Defendants asserted that Mr. Plasse had listed lay and expert witnesses and exhibits in his portions of the Joint Pretrial Order that were not previously listed in any of his Rule 26(a)(1) disclosures even though the discovery deadline had been extended several times.  *See* Mot. for Preclusion, ECF No. 118-1.  Defendants also contended that Mr. Plasse had failed to provide any of the required information relating to his

anticipated expert witnesses as required by Rule 26(a)(2).  *Id.*

Following oral argument on December 19, 2022, the Court granted the motions to preclude in part, denied them in part, and reserved decision on others.  Minute Entry and Order dated Dec. 19, 2022; *see generally* Tr. dated Dec. 19, 2022, ECF No. 207.  In so doing, the Court allowed Plaintiff's counsel one final opportunity to cure certain defects in his earlier disclosures.  *Id.*  The Court set a trial date for May 8, 2023, Order dated Jan 13, 2023, and an expedited schedule for remaining discovery and pretrial motions, Trial Management Order, ECF No. 155.

On January 23, 2023, the Clerk of Court received a letter directly from Plaintiff addressed to Magistrate Judge Kuo indicating that he was having trouble getting in contact with Mr. Plasse.  Letter dated Dec. 28, 2022, ECF No. 156.  Plaintiff informed the Court that he did not know the current status of his case, and that on those occasions when Mr. Plasse did respond to his letters seeking information, those responses typically did not arrive until "months" later.  *Id.*  The letter was entered on the docket, and this Court promptly scheduled a video conference with Plaintiff and counsel for both parties for February 17, 2023.  *See* Order dated January 25, 2023. The Court's order indicated that the purpose of the conference was to discuss the assertions raised in Plaintiff's letter.  *Id.*

Mr. Plasse failed to appear at the February 17 video conference.  Minute Entry dated Feb. 21, 2023.  During the Court's rescheduled video conference on February 24, 2023, which all parties attended, and which was electronically recorded, Plaintiff reiterated the concerns in his Letter, stating that Mr. Plasse does not always timely respond to him, and that Mr. Plasse's voicemail box was full.  The Court inquired

5

whether Plaintiff wished to continue with Mr. Plasse as his lawyer at trial, whether he would like the Court to assist him in finding co-counsel for Mr. Plasse at trial, or whether he wished to discharge Mr. Plasse and have the Court assist him in finding new counsel.  Plaintiff requested that Mr. Plasse be assisted with co-counsel at trial because Mr. Plasse had "a lot to do," and Plaintiff wanted to make sure that he was adequately represented at trial.  One week later, however, Mr. Plasse wrote to the Court and stated that his client had changed his mind and did not wish to proceed with co-counsel for trial.  Letter dated Mar. 3, 2023, ECF No. 170.  The letter was listed as cc'd to Plaintiff.  *Id.*  The Court accepted Mr. Plasse's representations and made no further inquiries as to whether the letter accurately reflected Plaintiff's current instructions to or agreements with Mr. Plasse.

On March 29, 2023, this Court held a conference with counsel on the Defendants' outstanding motions to preclude witnesses and other pretrial matters. Defendants argued that the Court should limit the scope of Plaintiff's medical expert's testimony because Mr. Plasse had failed to provide minimally adequate Rule 26(a)(2)(C) disclosures.  Although the Court would have been well within its discretion to grant Defendants' requested relief and limit the testimony of Plaintiff's only proffered expert, it reserved decision on the motion to preclude until Plaintiff's medical expert was deposed and ordered Plaintiff to bear the costs of that deposition. *See* Minute Entry dated Mar. 30, 2023.

In addition, at the March 29, 2023 conference, the Court asked Mr. Plasse how much time he would require to prepare and meet with Plaintiff prior to trial, so that the Court could enter a writ to have him produced on the designated date.  Mr. Plasse

stated that one week prior to trial would be sufficient.  The Court advised Mr. Plasse that the Department of Corrections and Community Supervision ("DOCCS") typically requires several weeks' notice to produce an incarcerated party for court appearances and directed Mr. Plasse to prepare a draft writ with the relevant information.  Three weeks later, on the morning of April 19, 2023, the Court entered an order stating that it had yet to receive a draft order to produce Plaintiff and directed Mr. Plasse to file one by the end of the day.  Order dated Apr. 19, 2023.  The order further reminded Mr. Plasse to include any "special medical needs of which prison staff should be aware" in the proposed writ.  *Id.*

On the evening of April 19, 2023, the parties filed two documents, both dated April 18, 2023.  The first was a partial voluntary dismissal of certain claims, Partial Stipulation of Dismissal, ECF No. 180, and the second was a stipulation of dismissal with prejudice of all remaining claims, Stipulation of Dismissal, ECF No. 181.  In the latter stipulation, signed by counsel for all parties, the parties informed the Court that they had reached a settlement and sought to dismiss the action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  *Id.*

On April 24, 2023, this Court entered an order adjourning the May 8, 2023 trial in light of the parties' stipulations of settlement, but converted one of the previously-scheduled trial dates—May 9, 2023—into a conference with the Court.  Order dated Apr. 24, 2023.  On that same date, the Court also entered an order to produce Plaintiff for the conference in person.  Order to Produce Pl., ECF No. 182.  Based on its observations of Plaintiff's difficulties communicating with Mr. Plasse, the Court concluded that it would be prudent to confirm, with all parties present, that Plaintiff

had given his informed and voluntary consent to the settlement terms before so ordering the stipulations and dismissing the action with prejudice.

On May 1, 2023, Alan Scheiner, counsel for Defendants, sent a letter to the Court asking to adjourn the May 9 conference until a date after May 19, because counsel was now set to appear at another trial on May 15 and required the entire week prior for "trial preparation."[2]  Mot. to Adjourn Conference at 1, ECF No. 183. Defense counsel's letter also contained an unusual application asking the Court to excuse *Plaintiff* (*i.e.,* the opposing party) from in-person appearance at the conference, regardless of when it was held, and to instead hold the conference virtually.  Defense counsel asserted that Plaintiff should not appear physically in court because "plaintiff's presence in person . . . is not necessary under the circumstances." *Id.* at 2.  Defense counsel further argued that providing for Plaintiff's in-person appearance would burden DOCCS (whom counsel did not represent) and created a "risk of flight" on Plaintiff's part.  *Id.* at 1.  Defense counsel represented that he made this application "with the consent of Plaintiff."  *Id.*

The Court informed counsel by email that it would be unable to accommodate defense counsel's request for the requested adjournment due to the Court's own trial schedule and entered a brief order on the docket denying defense counsel's motion. Order dated May 1, 2023.

Two days later—on the morning of May 3, 2023—the Court received a second

---

[2] The Court later learned that defense counsel's trial the week of May 15 was scheduled to last only two days, making it difficult to discern why counsel could not appear for a brief conference in this matter for an entire week prior.  May 31 Tr. at 19:3–12.

application to waive Plaintiff's presence at the May 9 conference, this time from Mr. Plasse. May 3 Letter at 1. Mr. Plasse transmitted this request by email to the Court's law clerk and Case Manager. *Id.* Rather than propose (as defense counsel had done) that Plaintiff appear by video, however, Mr. Plasse moved the Court to vacate the order for Plaintiff's production and adjourn the conference entirely. *Id.* In support of his application, Mr. Plasse represented to the Court that its April 24 writ providing for Plaintiff's appearance in court on May 9 had already compromised—and if not vacated, would continue to compromise—Plaintiff's medically necessary psychiatric care at DOCCS. *Id.* The full text of the Letter reads as follows:

> I was not provided with a copy of the Writ or any of the direct correspondence to my client from the Court.
>
> Nevertheless, at the current time my client is in need of Mental Health Treatment at an appropriate facility. The Writ has returned him to Orleans for transfer to the Court, but Orleans does not have the appropriate Mental Health Treatment for him.
>
> By way of background, Michael Walker [15 A 1230] prior to the Writ being served on Orleans was transferred to Wende Correctional Facility for Mental Health Treatment because his level had decreased. *After the Writ was served, he was transferred back to Orleans where he cannot get the Mental Health Treatment the State believes is necessary at Wende. He is currently back at Orleans without the proper Mental Health Treatment for his level until he is transferred to another State Facility for this Court appearance.* The State Facilty [sic] he is transferred to must be one with the appropriate level of Mental Health Treatment and in addition, have SHU housing. He is currently an SHU inmate at Orleans without Mental Health Treatment. He has a disciplinary hearing scheduled for tomorrow. *I believe that if the Court would adjourn the Court appearance to an appropriate date, the Writ would be vacated, and he could be sent to an appropriate facility for the treatment that he currently needs, rather than be confined in SHU without treatment for an indeterminate time at Orleans until he is bused to the Court.* His level may return to his prior level with appropriate treatment, and the matter can be re-scheduled. Otherwise he is going to spend days at Orleans without treatment, be transferred on a long

distance trip, housed in an appropriate facility prior to the Court appearance at a State facility that he is not familiar with, that has both SHU housing and Mental Health Treatment, appear in Court without his level returning to his prior status, and then go through the same trip back, which may take more than a week, for an hour court appearance.

I do not think his appearance in person is appropriate for his current health status. For his mental health status, I am requesting that the Writ be vacated and the matter adjourned until such time as his levels return to an appropriate level.

I am sending this via email because I do not wish this application to be a matter of public record. I have discussed this issue with counsel for defendants.

*Id.* (emphasis added).

Having no reason to doubt any of Mr. Plasse's highly specific representations as to Plaintiff's then-existing psychiatric condition and continuing need for intensive treatment, the Court immediately entered an order to DOCCS vacating its April 26 writ. Order Vacating Writ, ECF No. 184. In its order, the Court further directed "that Plaintiff be immediately returned to the Wende Correctional Facility as soon as possible to ensure that his medical care is not disrupted." *Id.*

The Court then directed Mr. Plasse to memorialize his motion to vacate the writ in a sealed filing on the docket. Order dated May 3, 2023. He did so two days later, on May 5, 2023. Letter dated May 5, 2023 ("May 5 Letter"), ECF No. 187-1.[3]

In between these written submissions—on May 4, 2023—Mr. Plasse spoke with his client by telephone. However, he failed to advise his client during that conversation that the Court had earlier scheduled a conference to discuss the parties'

---

[3] This letter, along with Mr. Plasse's original May 3 motion to vacate transmitted by email, have since been unsealed with Plaintiff's consent. *See* May 31 Tr. at 40:12–41:24.

settlement at which it had provided for Plaintiff's in-person appearance.  Tr. dated May 9, 2023 ("May 9 Tr.") at 18:6–17, ECF No. 200.  Nor did Mr. Plasse inform his client that the previous day, the Court cancelled that appearance and was proceeding with the conference on May 9 without Plaintiff as a result of Mr. Plasse's written representations to the Court about Plaintiff's purported mental health status.  May 9 Tr. at 18:6–17.  At no point did Mr. Plasse ask his client if he in fact wished to attend the May 9 conference, either in person or remotely.  May 9 Tr. at 44:16–21.

Mr. Plasse then filed his May 5 Letter, which repeated *verbatim* many of the assertions in his May 3 Letter regarding Plaintiff's allegedly serious mental health status and the essential treatment that Plaintiff was unable to receive as a direct result of the Court's order to produce him for the May 9 conference.  *See, e.g.*, May 5 Letter at 1 (stating that earlier request to Court to vacate the writ was made to ensure that Plaintiff "could be sent to *an appropriate facility for the treatment that he currently needs*, rather than being confined in SHU *without treatment for an indeterminate time at Orleans* until he could be shipped to the Court" (emphasis added)).

Mr. Plasse's May 3 email was the first the Court had heard of a possible psychiatric condition or mental health crisis of any kind on Plaintiff's part.  Given the email's proximity to the parties' stipulations of settlement, the Court was concerned that Plaintiff may not have been competent to enter into the settlement agreement signed by his counsel two weeks earlier, on April 18.  At the very least, Mr. Plasse's representations as to his client's allegedly serious psychiatric condition as of May 3 merited further inquiry to ensure that Plaintiff's competency was not an issue when

the settlement was reached and filed with the Court.  The Court thereafter informed counsel that it was inclined to enter an order for the New York State Department of Mental Health's confidential production *in camera* of Plaintiff's recent mental health records but urged Mr. Plasse to inform the Court if he had any objection to same. Hearing none, the Court ordered their production.  Order to Produce Medical Records, ECF No. 186.

The Court received Plaintiff's records from the Wende Correctional Facility ("Wende") on May 8, 2023.[4]  The records confirmed that Plaintiff had been briefly transferred to Wende on April 27, where he was evaluated by mental health personnel before being returned to his regular placement at Orleans Correctional Facility ("Orleans") on May 1, 2023.  But the records also revealed that virtually all the other assertions in Mr. Plasse's May 3 and May 5 Letters were false.

In particular, Plaintiff's medical records flatly contradicted Mr. Plasse's representations to the Court that Plaintiff was "at the current time . . . in need of Mental Health Treatment at an appropriate facility," and that as a direct result of this Court's writ to produce Plaintiff in court for the May 9 conference, Plaintiff "was transferred back to Orleans where he cannot get the Mental Health Treatment the State believes is necessary at Wende."  May 3 Letter at 1; *see also* May 5 Letter.

In fact, after evaluating Plaintiff, DOCCS officials at Wende quickly concluded

---

[4] During a conference on May 31, 2023, Plaintiff gave the Court permission to make public the portions of his medical records that were discussed on the record. May 31 Tr. at 40:12–41:24.  Plaintiff's medical records are filed under seal as an attachment to this Order, and have been cited in this opinion only to the extent necessary to explain the basis for the Court's ruling and address Mr. Plasse's objections to the Order to Show Cause.

that Plaintiff had *no* serious mental illness diagnoses.  Ex. 1 at 9.  Instead, Plaintiff's records revealed that Plaintiff did not "present with any objective signs or symptoms of depression and/or distress," and that he reported his mood as "blessed."  *Id.* at 12. Plaintiff also denied needing mental health services and informed staff at Wende that he was moved there after he reported fearing for his safety at Orleans.  *Id.* at 11.  And after three days of monitoring Plaintiff, Wende officials concluded that no further intervention, treatment, or medication was needed.  Instead, they simply noted that Plaintiff would be followed by mental health services soon at Orleans.  *Id.* at 23.

Similarly, Plaintiff's records belied Mr. Plasse's representations to the Court on May 3 and May 5 that Plaintiff had been returned to Orleans in anticipation of his upcoming court-ordered appearance in Brooklyn and was being deprived of medically necessary care for that reason.  Instead, the medical records made clear that for reasons entirely unrelated to this Court's order, Plaintiff was returned to Orleans in the ordinary course on May 1—two days *before* Mr. Plasse made these representations to the Court.  His return to Orleans was ordered because the Wende staff had concluded, as of May 1, that he was *not in need of any further psychiatric treatment*, and they had no reason to keep him at Wende any longer.  Indeed, at the time Plaintiff was cleared to return to Orleans, Plaintiff told Wende officials that he was feeling "good" and Wende officials described Plaintiff as "stable."  *Id.* at 19, 23.

On the same day that this Court obtained the above mental health records, it received a letter directly from Plaintiff.  The letter was dated April 17, 2023 (two days before the settlement was filed on April 19), but was postmarked May 3, 2023, and

received by this Court on May 8, 2023.  Letter dated Apr. 17, 2023, ECF No. 189.[5]  In the letter, Plaintiff informed the Court that "my attorney Andrew Plasse [h]as settled my case for ($25,000.00) Dollars!"  *Id.* at 1 (parentheses in original).  Plaintiff claimed that Mr. Plasse agreed to this settlement without his knowledge or prior consent (specifically stating that the City's lawyer and Mr. Plasse "ma[de] a fast ball move on me without letting me know") and that Plaintiff only learned of the settlement after the fact, when he spoke with "two other Attorney[s]" on April 21—*i.e.,* two days after the stipulations of settlement were filed.  *Id.*  Plaintiff stated that he first spoke to Mr. Plasse on April 26, who sounded "[a] little surprised that [I] knew" the case had settled.  *Id.*

Plaintiff's letter proceeded, *inter alia,* to ask the Court's assistance in "com[ing] up with a good settlement for me" based on what Plaintiff asserted were his ongoing physical and emotional damages from the 2013 shooting in question.  *Id.* at 1–2.  Plaintiff then—seemingly unaware that on April 24, the Court had scheduled an in-person conference, with Plaintiff present, for May 9—asked the Court, "Can we have a 'TV' conference on this matter?"  *Id.* at 2.

At this point, the Court had already vacated the writ for Plaintiff's in-person appearance on May 9 and had insufficient time to make the necessary prior arrangements with DOCCS for Plaintiff's appearance by video.  Accordingly, the

---

[5] Mr. Plasse appears to contend that the Court inappropriately filed certain letters from Plaintiff on the docket.  Response to OTSC at 13.  But as Mr. Plasse should be aware, when communications are received from litigants, the Clerk's Office automatically posts those communications on the docket to avoid potential *ex parte* communications, and that is how Plaintiff's letters came to the Court's attention and to be included on the docket here.

Court proceeded with an in-person conference with counsel for both parties, but without Plaintiff, on May 9.

At the May 9 conference, the Court began by explaining the reasons it had originally scheduled the conference, mindful of the general rule that a court typically has no role to play when a stipulation of dismissal is filed under Rule 41(a)(1)(A)(ii), absent exceptional circumstances.  May 9 Tr. at 2:12–3:13.  The Court went on, however, to put on the record its concerns about (1) the circumstances under which Mr. Plasse apparently gave his consent to waive his client's in-person appearance, as reflected in defense counsel's May 1 letter; (2) the veracity of the statements in Mr. Plasse's May 3 and May 5 submissions regarding Plaintiff's alleged psychiatric status and treatment needs at that time; and (3) Plaintiff's May 8 letter to the Court in which he made what the Court construed as a request to be relieved of the terms of the settlement filed on April 19, 2023, and which also indicated that he did not give Mr. Plasse his consent to enter into the settlement on his behalf.  May 9 Tr. at 5:7–11:7.

In response to these concerns, Mr. Plasse maintained that he had a call with Plaintiff on April 13, during which Plaintiff gave him full authority to settle the case on the terms that were agreed to and filed with the Court on April 19, May 9 Tr. at 31:13–24, and that he discussed "every aspect of the settlement" with Plaintiff during another call on April 26, May 9 Tr. at 14:14–18.  Mr. Plasse also stated that during the April 26 phone call, Plaintiff asked Mr. Plasse to represent him in a disciplinary hearing at Orleans on April 28, as Plaintiff had been housed in the Special Housing Unit ("SHU") due to a disciplinary infraction.  May 9 Tr. at 14:14–23.  However, Mr.

15

Plasse learned on April 28 that there would be no hearing because Plaintiff was transferred to Wende.  May 9 Tr. at 14:24–15:3.

According to Mr. Plasse, Plaintiff's counselor told him on April 28 that Plaintiff "had gone from mental health level [] six to a five"[6] and that Plaintiff's mental health status was "day-to-day," which prompted Mr. Plasse to write his May 3 Letter.  May 9 Tr. at 15:3–20.  Mr. Plasse stated that he knew on May 3 that Plaintiff returned to Orleans, and that he ultimately represented Plaintiff in the disciplinary hearing on May 4.  May 9 Tr. at 17:11–13, 26:7–11.  Mr. Plasse recounted that he "won the disciplinary hearing," and Plaintiff "was released from Special Housing Unit."  May 9 Tr. at 17:11–13.

Mr. Plasse admitted that he never once asked his client whether he wished to attend the May 9 conference, even though the Court had specifically provided for Plaintiff's in-person appearance in its original scheduling order.  May 9 Tr. 18:2–5, 44:16–21.  Notably, Mr. Plasse failed to do so even though he claimed to have discussed "every aspect of the settlement" with Plaintiff in their April 26 telephone call, which took place two days after the Court issued its scheduling order for the May 9 conference and directed DOCCS to produce Plaintiff in person.  May 9 Tr. at 14:14–19.  Between April 28 and May 4, he made no efforts to schedule an additional call with Plaintiff to discuss the upcoming court date or to further inquire into Plaintiff's mental health status.  May 9 Tr. at 18:18–21:20.  Nor did Mr. Plasse raise the court

---

[6] Based on Plaintiff's mental health records, it appears that DOCCS uses mental health "levels" on a scale of one to six to record the severity of a patient's perceived mental health, with lower mental health levels indicating more severe mental illness.

appearance with his client when they spoke on May 4 in connection with the disciplinary hearing.  May 9 Tr. at 18:6–17.

When asked, Mr. Plasse was unable to recount any basis for the representations in his May 3 Letter that Plaintiff had been returned to Orleans because of this Court's writ, and that he could not get necessary mental health treatment at Orleans.  May 9 Tr. at 26:2–28:7.  In fact, Mr. Plasse stated that he "wasn't sure why [Plaintiff] was back at Orleans, to be honest."  May 9 Tr. at 27:19–20.  Mr. Scheiner also stated that Mr. Plasse had mentioned Plaintiff's mental health to him around the time Mr. Scheiner filed the May 1 letter, but Mr. Scheiner "didn't get the impression" based on his discussions with Mr. Plasse "that [Plaintiff's mental health condition] was serious."  May 9 Tr. at 61:20–62:21.

Additionally, when the Court asked Mr. Plasse about his authority to enter into the settlement agreement, Mr. Plasse admitted that he did not discuss with Plaintiff—or even investigate—various terms of the settlement.  For example, despite the fact that Mr. Plasse was entitled to deduct litigation costs and disbursements from the gross settlement amount, Mr. Plasse had not calculated even an estimate of such expenses before entering into the settlement agreement or appearing at the May 9 conference.  May 9 Tr. at 33:15–35:15.  Mr. Plasse himself acknowledged that Plaintiff was "entitled to know" that amount before giving Mr. Plasse authorization to settle yet failed to provide that information to his client.  May 9 Tr. at 35:2–4.  Similarly, Mr. Plasse acknowledged that although the settlement expressly allows for certain liens against Plaintiff to be deducted from the settlement amount, Mr. Plasse never inquired into whether Plaintiff was subject to any such liens and never raised

17

that possible issue with his client.  May 9 Tr. at 31:25–33:14.

Following the May 9 conference, the Court scheduled a subsequent video conference for May 19, 2023.  Orders dated May 9, 2023 and May 11, 2023. Defendants filed a motion requesting to submit evidence in the form of exhibits and sworn testimony to be taken from Plaintiff and Mr. Plasse at the May 19 conference. Mot. to Submit Evidence, ECF No. 193.  The Court denied Defendants' request to convert the May 19 conference into an evidentiary hearing but allowed Defendants to file a brief raising additional arguments regarding the settlement agreement by 9:00 AM on May 19.  Order dated May 17, 2023.  In accordance with the Court's Order, Defendants filed an opposition to Plaintiff's motion to vacate the settlement, which included as exhibits the stipulations of settlement and attachments, on the morning of May 19.  Opp'n to Mot. to Vacate, ECF No. 195.

During the May 19 video conference, which Plaintiff and counsel for both parties attended virtually, the Court asked Plaintiff about the factual assertions in Mr. Plasse's May 3 and May 5 Letters.  Consistent with Mr. Plasse's concessions at the May 9 conference, Plaintiff stated that Mr. Plasse never told him that the Court had requested Plaintiff's in-person appearance for the May 9 conference or asked for Plaintiff's preference about whether he wished to appear in court.  Tr. dated May 19, 2023 ("May 19 Tr.") at 72:2–13, ECF No. 201.  Plaintiff further stated that when they spoke by telephone at the time that Mr. Plasse appeared on his behalf in the May 4 disciplinary hearing, Mr. Plasse did not ask Plaintiff any questions about his mental health.  May 19 Tr. 72:14–20.

The Court also discussed the settlement agreement with Plaintiff.  Plaintiff

18

denied giving Mr. Plasse authorization to settle the case for less than $2 million and asked the Court to vacate the $25,000 stipulations of settlement filed with the Court on April 19. May 19 Tr. at 71:4–17. Plaintiff further stated that he did not want Mr. Plasse to continue representing him. May 19 Tr. at 61:7–13.

Additionally, the Court addressed Defendants' opposition to Plaintiff's motion to vacate. When the Court first asked Mr. Plasse about the exhibits to Defendants' May 19 filing, Mr. Plasse contended that he "didn't get a chance to look at it." May 19 Tr. at 24:13–19. However, after a bathroom break, Mr. Plasse stated that he *had* read the Defendants' submissions, and had just forgotten when he was asked about it minutes before. May 19 Tr. at 27:12–23. The Court ultimately adjourned the conference without making a ruling on whether to vacate the settlement. May 19 Tr. at 98:10–14.

On May 31, 2023, the Court held another video conference, with Plaintiff and counsel for both parties in attendance. The Court informed the parties that it was vacating the settlement under Federal Rule of Civil Procedure 60(b)(6), based on what it identified as (1) failures on Mr. Plasse's part to investigate and/or provide his client with basic information related to terms of the settlement prior to its entry, and (2) certain conduct by Mr. Plasse (as well as by opposing counsel) in furtherance of his effort to have the Court excuse Plaintiff from the May 9 in-person conference. May 31 Tr. at 5:21–37:8. The Court also outlined for the record what it concluded were repeated acts of gross negligence by Mr. Plasse in his representation of Plaintiff over nearly a decade, although it did not rely on those findings as grounds to vacate the settlement. May 31 Tr. at 30:5–36:15; Minute Entry dated May 31, 2023. Moreover,

in vacating the settlement, the Court did not wade into any assessment of its substantive terms. And because the Court determined that it did not need to reach the disputed issue of whether Plaintiff authorized Mr. Plasse to settle the case to vacate the settlement, the Court held that an evidentiary hearing on that issue was unnecessary. May 31 Tr. at 8:8–9:17.

The Court also confirmed on the record that Plaintiff wished to discharge Mr. Plasse as his counsel and have the Court refer him to an assistance program for *pro se* civil litigants seeking counsel in the Eastern District of New York. May 31 Tr. at 4:1–5; 38:8–39:17; *see also* Mot. to Withdraw Attorney, ECF No. 198. Mr. Plasse agreed to withdraw from the case and was terminated from the docket on June 2, 2023. *See* Text Order dated June 2, 2023. Plaintiff is now represented by new counsel.

On June 28, 2023, this Court *sua sponte* ordered Mr. Plasse to show cause why he should not be sanctioned for his conduct in this case. *See* OTSC. As relevant here, the Court highlighted that Mr. Plasse's false representations in his May 3 and May 5 Letters to the Court could be grounds for sanctions under Rule 11, and that his failure to investigate and inform Plaintiff about the terms of the settlement could be grounds for sanctions pursuant to the Court's inherent power. *Id.* at 7–10.

Mr. Plasse filed a Response to the Order on August 3, 2023, and disputed any wrongdoing. *See* Response to OTSC. The Court now addresses whether Mr. Plasse's conduct warrants sanctions under Rule 11 and the Court's inherent power.

## II.   Legal Standard

Rule 11 permits a court, either on a party's motion or on its own initiative, to

"impose an appropriate sanction on any attorney" who engages in conduct proscribed by Rule 11(b).  Fed. R. Civ. P. 11(c).  As relevant here, Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the written submission "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), and that all "factual contentions" contained therein "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3).

When a district court considers an imposition of sanctions *sua sponte*, the court must "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."  Fed. R. Civ. P. 11(c)(3).  Moreover, "in contrast to the [objective unreasonableness] mens rea standard that applies when a party makes a motion for Rule 11 sanctions," "where, as here, the court itself initiates an inquiry into a potential Rule 11 violation, sanctions should not be imposed unless the responding attorney acted with 'subjective bad faith.'"  *In re Gushlak*, No. 11-mc-218, 2012 WL 2564523, at *1 (E.D.N.Y. July 2, 2012) (quoting *In re Penny & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003)).

In addition to Rule 11, a district court can "impose monetary sanctions against a litigant (or its counsel) for misconduct" through its "inherent power" to "impose silence, respect, and decorum in their presence, and submission to their lawful

21

mandates." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021).  "When a district court invokes its inherent power to impose a sanction of attorneys' fees or to punish actions by an attorney that are taken on behalf of a client, 'the district court must make an explicit finding of bad faith.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023) (quoting *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000)).  "But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit," it "need not find bad faith before imposing a sanction under its inherent power." *Seltzer*, 227 F.3d at 42.  That is, "a court need not make a finding of bad faith before sanctioning an attorney for 'negligently or recklessly fail[ing] to perform his responsibilities as an officer of the court.'" *Int'l Techs. Mktg., Inc.*, 991 F.3d at 368 n.5 (quoting *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001)).

## III.    Discussion

For the reasons to follow, the Court imposes Rule 11 sanctions on Mr. Plasse for the false statements he made in his May 3 and 5 Letters.  However, the Court declines to impose additional sanctions on Mr. Plasse for his misconduct in entering the stipulations of settlement.

### A.    Rule 11

In its Order to Show Cause, the Court directed Mr. Plasse to address whether his May 3 and May 5 Letters violated Rule 11, because in those letters he "specifically represent[ed] to the Court that as of those dates, Mr. Walker's ongoing, medically necessary psychiatric care had been—and was continuing to be—disrupted, and that

this was so specifically *because of* the Order to Produce Mr. Walker that had been entered by this Court on April 24, 2023." OTSC at 4. More precisely, Mr. Plasse represented to the Court that his client's mental health treatment had been curtailed and he had been returned to Orleans for a scheduled "transfer to Court" (on May 9) pursuant to this Court's April 24, 2023 writ—thus depriving Plaintiff of "the treatment that he currently needs" at "an appropriate facility." May 5 Letter at 1.

However, the Court noted that Plaintiff's medical records demonstrated that Plaintiff "had not been transferred to Wende CF for urgent psychiatric care," "was not diagnosed with any serious mental health condition, nor any condition that DOCCS providers concluded required *any* form of treatment," and "had been fully cleared by staff for return to Wende" on May 1—two days before Mr. Plasse's May 3 Letter. OTSC at 6. And during the May 9, 19, and 31 conferences, Mr. Plasse revealed that after learning of Plaintiff's transfer to Wende, he made no further efforts to obtain specific information about Plaintiff's status or the reasons for his transfer to and from Wende prior to submitting his May 3 and 5 Letters to the Court. These revelations indicated to the Court that Mr. Plasse's factual contentions were made without evidentiary support in violation of Rule 11(b)(3) and for the improper purpose of keeping Plaintiff out of Court in violation of Rule 11(b)(1).

Mr. Plasse's arguments in his Response to the Court's Order to Show Cause are short (and, in some cases, incorrect) on legal authority and long on sarcasm and disrespect for the Court. Nevertheless, the Court understands Mr. Plasse as arguing that his May 3 Letter is not governed by Rule 11, his representations in his May 3 and May 5 Letters were not false, and he did not have an improper purpose for

23

submitting the May 3 and May 5 Letters.  The Court addresses each argument in turn and concludes (1) Mr. Plasse's May 3 Letter is subject to Rule 11 sanctions; (2) Mr. Plasse's representations in his May 3 and May 5 Letters violated Rule 11(b)(3); and (3) sanctions are warranted here.  Because the Court concludes that Mr. Plasse should be sanctioned under Rule 11(b)(3), it does not consider whether Rule 11(b)(1) provides an independent basis for sanctioning Mr. Plasse.

i.      Rule 11 Applies to Mr. Plasse's May 3 Letter

As an initial matter, Mr. Plasse contends that his May 3 Letter cannot be subject to sanctions under Rule 11 because his email was not signed or filed with the Court.[7]  Rule 11(b) applies to any "pleading, written motion, or other paper" that is presented to the court "by signing, filing, submitting, or later advocating it."  Fed. R.

---

[7] Mr. Plasse also contends that the Court cannot consider his May 5 Letter because it was submitted pursuant to the Court's May 3 Order directing him to "file the information contained in his May 3, 2023 email to the Court as a letter on the docket," and, because the Court had already vacated the writ, the Letter had no effect. Response to OTSC at 17.  But of course, Mr. Plasse was not required to reiterate the falsities in his May 3 Letter.  He could have taken the opportunity to correct those misrepresentations, particularly because he had contact with his client on May 4 and could have inquired about his transfer to and from Wende and his current mental health status before filing the May 5 Letter.  Instead, he again asserted in his May 5 Letter that Mr. Walker "was transferred back to Orleans for transfer to Court" where he would be "without treatment."  May 5 Letter at 1.  The Court is not precluded from considering the substance of those statements that Mr. Plasse made of his own volition.

Nor does Mr. Plasse provide any support for the proposition that a Court must act on Rule 11(b) violations for those violations to be sanctionable.  And in any event, the Court did rely on the representations about Plaintiff's psychiatric condition made in Mr. Plasse's May 5 Letter by declining to reinstate the writ for Plaintiff's in-person court appearance, as well as by not making alternate arrangements for Plaintiff's appearance by video or telephone at the May 9 conference.

Civ. P. 11(b). Mr. Plasse reads this language, together with Rule 11(a)'s requirement that "[e]very pleading, written motion, and other paper [] be signed by at least one attorney of record," Fed. R. Civ. P. 11(a), to mean that Rule 11 "applies *only* where a person files a paper." Response to OTSC at 14. And because his May 3 email was not signed or filed with the Court, Mr. Plasse argues that it cannot be the subject of sanctions.

Mr. Plasse is correct that the Second Circuit previously held that "[f]or a paper to trigger Rule 11, it must be both signed and filed in court." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1346 n.4 (2d Cir. 1991). But Mr. Plasse fails to recognize that "the 1993 amendment [to Rule 11] expanded the scope of litigating lawyers' obligations" by "permit[ting] sanctions based upon the 'presenting' of a paper—rather than limiting sanctions to those papers that bear an attorney's signature—and defining 'presenting' broadly as 'signing, filing, submitting, or later advocating.'" *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (emphasis omitted) (quoting Fed. R. Civ. P. 11(b)). That is, "[w]hile Rule 11(a) requires '[e]very pleading, written motion, and any other paper' filed with the court be signed," Rule 11(b) "makes clear that an attorney who files, submits or later advocates the pleading, written motion or other paper, is certifying that the requisite inquiry under Rule 11(b) was made . . ., even if the person did not sign the paper." *In re Sun Prop. Consultants, Inc.*, No. 8-16-72267, 2021 WL 3375831, at *4 (Bankr. E.D.N.Y. Aug. 2, 2021).

Because Mr. Plasse "submit[ted]" his Letter to the Court via email and "later advocat[ed]" the contents of the Letter in his May 5 Letter and during the subsequent

25

conferences with the Court, he "present[ed]" the May 3 Letter to the Court.  Fed. R. Civ. P. 11(b).  This conclusion accords with the text of Rule 11 as well as its core purpose: incentivizing counsel to ensure that their written applications to the court are truthful and accurate to the best of their knowledge, information, and belief.  If purportedly time-sensitive applications submitted by email (such as this one) were outside Rule 11's bounds, some counsel might choose to submit them in this fashion to avoid sanctions for noncompliance—or at the very least, might urge courts to act based on information that is inaccurate, inadequately sourced, or otherwise unreliable.

Additionally, to the extent that Mr. Plasse argues that his May 3 Letter was not a "pleading, written motion, or other paper," the Court finds otherwise.  While courts are "reluctant to characterize a letter generally as an 'other paper' on weighing Rule 11 sanctions," they have done so "where the letter in question was in effect a motion in disguise, recognizing that failure to sanction in such cases would elevate form over substance."  *In re Highgate Equities, Ltd.*, 279 F.3d 148, 153–54 (2d Cir. 2002) (citation omitted).  Put differently, "[t]hose cases in which a letter has served as the basis for Rule 11 sanctions have involved instances in which a party has sought to have a court take action in reliance on it."  *Lopez v. Constantine*, No. 94-cv-5921, 1997 WL 337510, at *3 n.6 (S.D.N.Y. June 18, 1997).

That is precisely what happened here.  Mr. Plasse's May 3 Letter—which "request[ed] that the Writ [for Plaintiff's in-person presence at the May 9 conference] be vacated and the matter adjourned until such time as his levels return to an appropriate level," ECF No. 205-1—asked the Court, in no uncertain terms, "to take

action in reliance on it," *Lopez*, 1997 WL 337510, at *3 n.6.  And the Court did, in fact, act in reliance on Mr. Plasse's Letter.  Taking seriously Mr. Plasse's representations regarding Plaintiff's mental health, the Court immediately vacated the writ and requested "that Plaintiff be immediately returned to the Wende Correctional Facility as soon as possible to ensure that his medical care is not disrupted."  Order Vacating Writ.

Additionally, Mr. Plasse stated in his Letter that he was only sending it "via email because [he] d[id] not wish this application to be a matter of public record."  May 3 Letter at 1.  In other words, Mr. Plasse only emailed his Letter, rather than filing it as a motion, because he did not want to make Plaintiff's sensitive mental health information public.  Because the May 3 Letter resembles a motion in all other respects, the Court is satisfied that Mr. Plasse's May 3 Letter "was in effect a motion in disguise" that is subject to Rule 11 sanctions.  *Highgate Equities*, 279 F.3d at 154.  To hold otherwise "would elevate form over substance," *id.*, and create an end-run around Rule 11 that this Court cannot endorse.

ii.    Mr. Plasse Violated Rule 11(b)(3)

Rule 11(b)(3) requires an attorney to certify that to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual contentions contained in a pleading, written motion, or other paper "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  A court has discretion to impose sanctions for violations of this requirement.  *See* Fed. R. Civ. P. 11(c)(1).  But because "the court issued an order to

show cause sua sponte, . . . it cannot impose sanctions on [Mr. Plasse] without first finding that he acted with subjective bad faith." *In re Gushlak*, 2012 WL 2564523, at *2.

There is no question that Mr. Plasse made statements in his May 3 and May 5 Letters that did not "have evidentiary support." Fed. R. Civ. P. 11(b)(3). It is also clear that Mr. Plasse failed to specifically identify statements that would "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* As explained above, Mr. Plasse stated in his May 3 and 5 Letters that Plaintiff had been transferred from Orleans to Wende for mental health treatment; that Plaintiff had then been transferred back to Orleans because of the Court's April 24, 2023 Writ; that at Orleans, Plaintiff could not "get the Mental Health Treatment the State believes is necessary at Wende"; and that Plaintiff's in-person appearance at the May 9 conference was not "appropriate for his mental health status." May 3 Letter at 1; May 5 Letter. Plaintiff's mental health records—which revealed that Plaintiff was transferred to Wende on April 27 "because he had problems with the officers at his prison (Orleans CF)," and that on May 1, after Plaintiff reported feeling "safe to go back to his prison," evaluators determined that he was "stable" and could be discharged back to Orleans, Ex. 1 at 21, 23—demonstrate the falsity of Mr. Plasse's statements. In other words, Plaintiff was transferred back to Orleans because officials at Wende determined that Plaintiff did not require intensive mental health treatment—a reason that is both independent from this Court's April 24 writ and wholly inconsistent with Mr. Plasse's representations about Plaintiff's allegedly ongoing mental health crisis.

28

Nevertheless, Mr. Plasse contends that the statements in his Letters were true because Plaintiff's mental health records state that Plaintiff had "suicidal ideation" when he was first evaluated at Wende. As an initial matter, Plaintiff's mental health records are unclear on that score. The "Yes" box is checked next to "Current suicidal ideation" on Plaintiff's evaluation on April 28, but next to the "Yes" and "No" boxes, the evaluator wrote "pt. denied." *Id.* at 12. The evaluator also stated that Plaintiff "did not present with any objective signs or symptoms of depression and/or distress" and recorded that Plaintiff described his mood as "blessed." *Id.* Additionally, Plaintiff "denied the need for mental health services" and answered "No" to the question "Over the past 2 weeks, have you had thoughts of killing yourself?" *Id.* at 11, 15. The mental health records as a whole are at best ambiguous as to whether Plaintiff was suffering from suicidal ideation.

Moreover, even if Plaintiff had reported suicidal ideation at some point prior to or during his evaluation at Wende, that fact would not alter the Court's conclusion that, to the best of Mr. Plasse's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual contentions in Mr. Plasse's Letters did not have evidentiary support. That is because at the time Mr. Plasse wrote those Letters, he had not reviewed Plaintiff's medical records and possessed no information indicating that Plaintiff was suffering from suicidal ideation. In fact, while Mr. Plasse now insists that Plaintiff was transferred to a Residential Crisis Treatment Program ("RCTP") at Wende, which Mr. Plasse claims "is for suicidal incarcerated individuals only," Response to OTSC at 11, Mr. Plasse also concedes that on April 28, 2023, he "was not told [Plaintiff] was sent to RCTP or any other program,"

*id.* at 8.  All Mr. Plasse knew was that Plaintiff was transferred to Wende, his mental health level had at some point changed "from six to a five," and his status was day-to-day.[8]  May 9 Tr. at 15:3–17.  That information plainly did not support Mr. Plasse's statements that at the time of his Letters, Plaintiff required mental health treatment that Orleans could not provide, and that Plaintiff had been returned to Orleans because of the Court's April 24 writ.

The only remaining question, therefore, is whether Mr. Plasse acted in bad faith when making these assertions.  In the Rule 11 context, bad faith has been defined by courts in this Circuit as "frivolous-plus," which requires "either direct or circumstantial evidence that counsel knew that the argument was without merit." *In re Gushlak*, 2012 WL 2564523, at *2.  "A false statement of knowledge can constitute subjective bad faith where the speaker 'knew that he had no such knowledge.'" *Mata v. Avianca, Inc.*, No. 22-cv-1461, 2023 WL 4114965, at *14 (S.D.N.Y. June 22, 2023) (quoting *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27 (2d Cir. 2017) (unpublished)).  Additionally, courts have recognized that "[o]ne type of circumstantial evidence of [knowledge that an argument was without merit] is

---

[8] Mr. Plasse's claim that Plaintiff's status was "day-to-day" arises from what he claims was a phone call he had with an unnamed counselor at Plaintiff's original facility (Orleans) prior to sending his May 3 Letter, May 9 Tr. at 15:12–17; that assessment is not reflected in Plaintiff's medical records, *see generally* Ex. 1.  Further, since the May 9 conference, Mr. Plasse has changed his story.  He now contends that he was told that Plaintiff "was at Wende for Mental Health Treatment, his status was day to day and his Mental Health Level was a Level 4 requiring treatment." Response to OTSC at 8.  Even if the Court were to accept Mr. Plasse's most recent iteration of facts as true, its conclusion that Mr. Plasse made false statements wholly lacking in evidentiary support in his May 3 and May 5 Letters would remain undisturbed.

30

evidence that the argument was made for an improper purpose." *In re Gushlak*, 2012 WL 2564523, at *2.

Here, there is strong evidence that Mr. Plasse acted in bad faith.  To start, Mr. Plasse represented in his May 3 and May 5 Letters that he had information about Plaintiff's transfer to Orleans and his mental health needs despite knowing "that he had no such knowledge." *Mata*, 2023 WL 4114965, at *14.  For example, Mr. Plasse asserted without hesitation that Plaintiff was returned to Orleans because of this Court's writ, but later admitted during the May 9 conference that he "wasn't sure why [Plaintiff] was back at Orleans, to be honest.  I didn't know if it was because of the writ, I didn't know if it was because he was out." May 9 Tr. at 27:19–21.  And while Mr. Plasse affirmatively stated that Plaintiff could not get what DOCCS professionals believed was "necessary" mental health treatment at Orleans, he admitted during the May 9 conference that he did not have *any* specific information indicating that Plaintiff was still in need of mental health treatment at the time he wrote his Letters, May 9 Tr. at 27:22–29:17—much less that Orleans lacked the capacity to provide whatever monitoring and treatment Plaintiff might still require.  Nor did Mr. Plasse make a single request to speak with Plaintiff or his mental health providers to try and obtain that information before making these representations to the Court.  May 9 Tr. at 18:18–21:20.[9]

---

[9] According to Mr. Plasse, he was not able to speak to Plaintiff's mental health providers because he "didn't have a mental health authorization." May 9 Tr. at 20:7–12.  However, Mr. Plasse never tried to obtain an Office of Mental Health Release.  May 9 Tr. at 20:16–24.  Nor did Mr. Plasse request that the Court order the production of the records on a confidential basis, which the Court ultimately did *sua*

There is also clear "evidence that [Mr. Plasse's arguments] w[ere] made for an improper purpose." *In re Gushlak*, 2012 WL 2564523, at *2. Rule 11(b)(1) gives examples of such improper purposes as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Courts have recognized other improper purposes beyond those specifically identified in Rule 11(b)(1), such as where an attorney "made [] misleading representations to bolster the chances she would receive [] extensions of time she requested." *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 382 (W.D.N.Y. 2013), *aff'd sub nom Rankin v. City of Niagara Falls, Dep't of Pub. Works*, 569 F. App'x 25 (2d Cir. 2014).

Here, Mr. Plasse made the misrepresentations regarding Plaintiff's mental health to support his request to vacate the Court's writ and adjourn the May 9 conference. That he made such demonstrably false statements about his client's allegedly ongoing mental health crisis and deprivation of necessary medical care while also (1) repeatedly concealing *from his own client* the fact that the Court had scheduled the conference at all and had made arrangements for Plaintiff to appear, and (2) failing to ask his client whether he was in a condition to and/or wished to appear at the conference, indicates that he acted with an improper purpose.

Mr. Plasse spoke with Plaintiff not once but twice after this Court entered the writ on April 24 for Plaintiff's in-court appearance—once on April 26 when they discussed the settlement, and once on May 4 in connection with Plaintiff's

_sponte_ after receiving Mr. Plasse's May 3 Letter. Clearly, Mr. Plasse could have taken further action to obtain additional information about his client's mental health status. His failure to do so indicates that he acted in bad faith.

disciplinary hearing.  Letter dated May 26, 2023, ECF No. 196.  Yet Mr. Plasse failed to once mention to his client, in either call, that the Court had scheduled a conference to discuss the very settlement that was the subject of their April 26 call.  Moreover, he never asked his client whether he wished to attend the May 9 conference in person and/or by videoconference.  May 9 Tr. at 44:16–21.  Instead, without his client's knowledge or consent, Mr. Plasse gave defense counsel his authority to petition the Court to waive Plaintiff's in-person appearance, and then filed his own application to adjourn the conference indefinitely.  Mot. to Adjourn Conference; May 3 Letter at 1; May 5 Letter.

Mr. Plasse's failure to mention the court-ordered May 9 appearance with Plaintiff during their April 26 phone conversation is particularly notable, given that, by Mr. Plasse's account, they discussed "every aspect of the settlement" during that call, which was "was well over an hour long."  May 9 Tr. at 14:14–18; Letter dated May 26, 2023 at 1.  Regarding their May 4 interaction in connection with Plaintiff's disciplinary hearing, Mr. Plasse stated that he did not tell Plaintiff about the May 9 court appearance because "there was no apparatus for attorney/client discussion."  May 9 Tr. at 18:6–17.  Yet Mr. Plasse now cites Plaintiff's silence regarding the settlement during their telephone conversation on May 4 as evidence that he was unaware of Plaintiff's dissatisfaction with the terms of the stipulation.  Specifically, Mr. Plasse avers: "I represented the plaintiff pro bono on May 4, 2023 and he voiced no objection to the settlement.  Do we just gloss over the fact that the day after I emailed a request to vacate the Stipulation, that my client and I were together and not one word was spoken that he was unhappy with the settlement?"  OTSC Response

at 24.

Surely if Plaintiff was expected to raise any concerns about the settlement during their May 4 telephone call, Mr. Plasse could have taken the opportunity on that same date to inquire about Plaintiff's mental health and inform him that the Court had, *sua sponte*, scheduled a conference to discuss that same settlement with the parties on May 9, as well as the fact that the Court had rescinded its original writ for Plaintiff to appear just one day earlier, at Mr. Plasse's request.  And since the Court had informed counsel that it would still hold the conference on May 9 as scheduled even if Plaintiff was not physically present, Order dated May 3, 2023, Mr. Plasse also could have asked Plaintiff if he wished to attend by video or telephone. He failed to do so.

As this Court outlined in its Order to Show Cause, Mr. Plasse's failure to inform Plaintiff during those conversations that the Court had directed DOCCS to produce Plaintiff for the May 9 conference, to ask Plaintiff whether he wished to appear at the conference in person or by video, and to inform Plaintiff that he filed written applications to excuse him from the May 9 conference, indicates that Mr. Plasse wrote the May 3 and May 5 Letters "as a ploy to increase the chances" of adjourning the conference for reasons unrelated to Plaintiff's wellbeing. *Rankin*, 293 F.R.D. at 392; OTSC at 7.  Perhaps Mr. Plasse was attempting to avoid scrutiny of the settlement, or to postpone the conference until he could get his client on board with its terms.  Whatever Mr. Plasse's motivation for adjourning the conference, the circumstances surrounding his May 3 and May 5 Letters leave the Court with "the firm conviction" that, despite his representations to the contrary, Mr. Plasse did not

submit his May 3 and May 5 Letters out of concern for his client's mental health. *Rankin*, 293 F.R.D. at 379.

The Court does not dispute that, based on the limited information Mr. Plasse did have on May 3 regarding Plaintiff's recent transfer to and from Wende, he may have had reason to be concerned that an in-person court appearance was not in his client's best interest.   But an attorney in that position must be candid with the Court about his limited information and ask for additional time to investigate his client's status and fitness to travel to Court, rather than make wholly unsupported assertions about Plaintiff's status and compromised medical care without equivocation.   And certainly, had Mr. Plasse been acting in good faith and solely out of concern for his client's mental health, he would have taken the opportunities he had on April 26 and May 4 to inform Plaintiff about the Court's conference; to ask Plaintiff whether he wished to attend in person, appear remotely, or waive his appearance; and (on May 4) to ask Plaintiff about his mental health status and treatment needs.   He also would not have concealed from his own client the fact that he had, just one day earlier, made a successful application to cancel Plaintiff's in-person appearance without Plaintiff's knowledge.   Unless Plaintiff's mental health had deteriorated to the point of incompetence—and no one, including Mr. Plasse, has ever suggested as much—the decision whether to attend the Court's conference about the proposed settlement was Plaintiff's to make.   That Mr. Plasse unilaterally took that decision out of his client's hands is strong evidence that his motives were improper.

Still, Mr. Plasse disputes that he was acting with an improper purpose because he contends that he did not know that Plaintiff wanted to vacate the settlement

agreement (as Plaintiff would later indicate in his *pro se* letter to the Court and at the May 19 and May 31 conferences) when Mr. Plasse wrote the Letters, and because he had other valid reasons to ask the Court to vacate the writ for Plaintiff's appearance.  Neither argument is persuasive.

First, Mr. Plasse argues that he only learned that Plaintiff was unhappy with the settlement agreement when Plaintiff's letter to the Court was docketed on May 8, 2023.  This assertion is belied by Mr. Plasse's statement at the May 9 conference that he thought Plaintiff might have been transferred to Wende "because he was upset about our discussion about settling the case."  May 9 Tr. at 23:21–24:2.  Based on that statement, the Court cannot accept Mr. Plasse's representations that Plaintiff expressed no misgivings regarding the settlement throughout their communications. And even assuming, *arguendo,* that Mr. Plasse was entirely unaware of Plaintiff's concerns, that would not alter the Court's conclusion that, based on Mr. Plasse's inconsistent conduct, Mr. Plasse asked the Court to adjourn the conference for reasons other than those stated in his Letters.

Second, Mr. Plasse argues that he had other valid reasons—including that Plaintiff was housed in the SHU due to a disciplinary infraction and that travel to a facility near the Courthouse would be detrimental to Plaintiff's physical health[10]—

---

[10] Mr. Plasse's post hoc argument that he acted out of concern for the "immense physical hardship," Response to OTSC at 9, that traveling for the court appearance would entail for Plaintiff is even more specious because, as Mr. Plasse knows, the Court was well aware of Plaintiff's physical health challenges.  In fact, the Court specifically instructed Mr. Plasse to indicate in his proposed order to produce Plaintiff for the then-scheduled trial (which Mr. Plasse never did file) whether "Mr. Walker has special medical needs of which prison staff should be aware."  Order dated Apr.

for requesting that the writ be vacated.  These post hoc rationales are difficult to square, both with each other and with the text of Mr. Plasse's May 3 and 5 Letters.

That is, if Mr. Plasse was primarily concerned with "get[ting] [Plaintiff] out of SHU" as he now argues, Response to OTSC at 15, he would not have wanted Plaintiff to return to Wende, which would have precluded Orleans from conducting Plaintiff's disciplinary hearing.  But Mr. Plasse explicitly argued that the Court should vacate the writ so that Plaintiff "could be sent to an appropriate facility for the treatment that he currently needs, rather than be confined to SHU without treatment for an indeterminate time at Orleans until he would be shipped to Court."  May 5 Letter at 1.[11]  And if Mr. Plasse was concerned with getting Plaintiff out of the SHU and relieving him of the burdens of traveling to the Courthouse, he could have simply requested that the May 9 conference be held virtually rather than in-person.  But Mr. Plasse did not request that relief.  Instead, he requested "that the Writ be vacated and *the matter adjourned* until such time as his levels return to an appropriate level." May 3 Letter at 1 (emphasis added).  And of course, Mr. Plasse explicitly stated that he was asking the Court to vacate the writ "*[f]or [Plaintiff's] mental health status*"— not for any other reason.  *Id.* (emphasis added).

More fundamentally, that Mr. Plasse might have "had an 'objective basis' to

_____

19, 2023.

[11] The Court also notes that Plaintiff's disciplinary hearing was held on May 4, at which time his disciplinary ticket was dismissed and Plaintiff was to be removed from the SHU.  May 9 Tr. at 17:11–13.  Yet in his May 5 Letter, Mr. Plasse failed to mention that fact and reiterated his purported concerns about his client being housed in the SHU.

seek" vacatur of the Court's writ ordering Plaintiff's in-person appearance "does not justify making misleading representations in subjective bad faith for an improper purpose." *Rankin*, 293 F.R.D. at 392. Those alternative motivations "did not give [Mr. Plasse] a special right or privilege to make misleading representations to the" Court. *Id.*

The Court thus finds that Mr. Plasse made the misrepresentations in his May 3 and May 5 Letters for an improper purpose, which further bolsters its conclusion that Mr. Plasse acted in bad faith.

### iii.   Sanctions Are Warranted

"[E]ven when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction for a Rule 11(b) violation is committed to the district court's discretion.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (cleaned up) (citing *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). "[A]ny sanction must be 'limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'" *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009) (quoting Fed. R. Civ. P. 11(c)(4)). In exercising its discretion to impose or fashion the sanction, a court may consider the factors listed in the Advisory Committee Notes on the 1993 Amendment to Rule 11:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is

needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . .

*Friedman v. Self Help Cmty. Servs., Inc.*, No. 11-cv-3210, 2017 WL 663539, at *3 (E.D.N.Y. Feb. 17, 2017); Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Here, the relevant factors favor an imposition of sanctions. As explained *supra*, Mr. Plasse's improper conduct was "willful" and "part of a pattern" of attempts to prevent his client from appearing before this Court to discuss the settlement agreement. *Id.* Additionally, as a lawyer, Mr. Plasse "is trained in the law." *Id.* And while there is no evidence before the Court that Mr. Plasse has engaged in the same type of misconduct in other litigation, "this is not the first time he has flouted his professional obligations and engaged in sanctionable behavior." *Libaire v. Kaplan*, No. 06-cv-1500, 2008 WL 794973, at *14 (E.D.N.Y. Mar. 24, 2008). In 2005, the Departmental Disciplinary Committee for the First Judicial Department charged Mr. Plasse with twelve violations of the Disciplinary Rules, including "violations of DR 1-102(a)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation)." *In the Matter of Plasse*, 17 A.D.3d 33, 34 (N.Y. App. Div. 2005). The charges were sustained, and Mr. Plasse was publicly censured. *Id.* at 37. Given Mr. Plasse's misconduct in the instant case, "[i]t is clear that [he] has not 'learned his lesson' from th[is] prior imposition[] and that further sanctions are necessary to prevent [him] from" engaging in dishonest conduct going forward. *Libaire*, 2008 WL 794973, at *14.

Separately, it is notable—and quite troubling—that Mr. Plasse chose to argue in his Response to the Order to Show Cause that the Court should decline to impose

39

sanctions because he had "never been sanctioned before in Federal Court," Response to OTSC at 25, while omitting any reference to the findings of and sanctions imposed against him by the Appellate Division of the New York State Court.   This selective presentation of his own disciplinary history underscores Mr. Plasse's spurious understanding of his "duty of candor to the court" and reenforces the propriety of today's decision.   *United States v. Gotti*, 322 F. Supp. 2d 230, 237 (E.D.N.Y. 2004) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993)).

The Court thus orders Mr. Plasse to pay a penalty to the Court in the form of $1,000, which the Court determines is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" while reflecting the seriousness of Mr. Plasse's misconduct.   Fed. R. Civ. P. 11(c)(4).

In so doing, the Court emphasizes that it does not in any way pass judgment on the substantive terms of the settlement agreement into which Mr. Plasse entered on his former client's behalf.   Mr. Plasse devotes much of his Response to the Order to Show Cause to disparaging his client's likelihood of success at trial (and, at times, his own client's credibility) and defending the value for which he attempted to settle the action.[12]   Perhaps Mr. Plasse is correct that Plaintiff will not ultimately receive a

---

[12] While the Court does not wade into the merits of Plaintiff's case, it pauses to note one of many inconsistencies and unsupported statements in Mr. Plasse's lengthy justification of the now-vacated settlement, which further undermines his credibility. Mr. Plasse now vehemently contends that the "medical evidence completely contradicts the Plaintiff's continued claim that he was shot in the back" to argue that he settled Plaintiff's case for a reasonable amount.   Response to OTSC at 3.   But in a letter Mr. Plasse sent to Plaintiff on May 4, 2021 that Plaintiff filed *pro se* with the Court in May 2023, Mr. Plasse wrote to his client that after receiving and reviewing the medical records from the incident, it was Mr. Plasse's view that "[t]he doctors []

larger award than that provided for in the now-vacated settlement; perhaps he is not. But whatever the outcome of the case, Mr. Plasse's criticism of his client is both inappropriate and irrelevant because "the Court's authority does not extend to approving, disapproving, or otherwise passing on the substantive terms of a private settlement of private claims in this ordinary civil litigation." *Chevron Corp. v. Donziger*, No. 11-cv-0691, 2013 WL 1481813, at *4 (S.D.N.Y. Apr. 8, 2013). Rather, the Court's only "duty under Rule 11" is "to determine 'whether [an] attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 205 (S.D.N.Y. 2007) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396 (1990)). And here, Mr. Plasse abused the judicial process by submitting two Letters to the Court that contained material misstatements of fact in bad faith, thereby triggering this Court's Rule 11 obligations.

### B.    Inherent Power

The Court also ordered Mr. Plasse to show cause why he should not be sanctioned pursuant to its inherent power based on his failure to investigate or inform Plaintiff of the costs incurred in litigating the matter or the potential liens that could be asserted over the settlement amount before entering the stipulations of

---

all agreed you were shot in the back. . . .  Maybe you are right in demanding Two Million Dollars since these officers shot you in the back."  Letter received by Plaintiff from Mr. Plasse dated May 4, 2021, attached to letter to Court dated May 24, 2023 at 3, ECF No. 199.

settlement.[13]   For the reasons to follow, the Court concludes that these omissions constitute clear violations of Mr. Plasse's duties as an attorney.   For the reasons set forth below, however, the Court exercises its discretion and declines to impose sanctions for these violations pursuant to its inherent power.

There is no question that Mr. Plasse failed to adequately investigate certain aspects of the settlement and, relatedly, to inform Plaintiff of the settlement's core terms and potential consequences.   For example, pursuant to the terms of Mr. Plasse's retainer agreement with Plaintiff, the costs and disbursements incurred while litigating this matter would be deducted from the settlement proceeds.   May 9 Tr. at 34:8–17. Yet Mr. Plasse failed to calculate or even estimate these costs prior to signing the stipulations of settlement on Plaintiff's behalf.   May 9 Tr. at 33:15–34:1. Additionally, the settlement documents provided that Plaintiff's award would also be subject to certain liens if any such liens existed, including liens arising from government-funded medical care that Plaintiff may have received.   Yet Mr. Plasse failed to review these terms and their potential implications with Plaintiff, and never investigated or inquired into whether Plaintiff had any liens that could be asserted by any entities, including the City of New York and Medicaid, before agreeing to the settlement.   May 9 Tr. at 31:25–33:14; 55:6–12.

Mr. Plasse contends that he cannot be subject to sanctions for this conduct because the ABA Model Rules of Professional Conduct only require him to inform his

---

[13] The Court also noted Mr. Plasse's failure to engage in minimally adequate preparation for the Court's conferences on May 9, 2023 and May 19, 2023.   While the Court remains troubled by these actions, it does not find that they warrant the imposition of sanctions.

client of his out-of-pocket disbursements after the case has fully concluded, and because there is no evidence on record that Plaintiff was actually subject to any liens. The Court disagrees with Mr. Plasse's reasoning on both scores.

First, while the ABA Model Rules may not specifically require attorneys to calculate their costs and disbursements prior to entering a settlement, the New York Rules of Professional Conduct—which are binding on attorneys who practice in the Eastern District of New York—require lawyers to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  New York Rule of Professional Conduct 1.4(b).  As explained at length in the Court's decision vacating the stipulations of settlement, Plaintiff was unable to make an informed decision regarding the settlement absent concrete information about how much money he would likely receive after Mr. Plasse deducted his costs and disbursements.  Indeed, by Mr. Plasse's own admission, Plaintiff was "entitled to know" the approximate amount of disbursements that would be deducted from any settlement proceeds before giving Mr. Plasse authorization to settle.  May 9 Tr. at 35:2–5.  Therefore, while Mr. Plasse was not required to provide Plaintiff with a final, line-by-line accounting of costs until the case was concluded, Mr. Plasse's failure to provide even an estimate of the costs he incurred in the over nine years he represented Plaintiff in this matter deprived Plaintiff of the information necessary to make an informed decision about the Defendants' settlement offer, which contravened Mr. Plasse's duties as an attorney.

Second, Mr. Plasse asserts that he was not required to even investigate whether there were any liens that could be asserted against Plaintiff before entering

into a settlement that expressly provided that such liens must be paid before Plaintiff received his award—because, he maintains, Plaintiff has not been a beneficiary of either Medicare or Medicaid since he was arrested and incarcerated in 2013. And even though Plaintiff was treated and received surgery at a public hospital in New York City after he was shot, May 19 Tr. at 47:3–48:23, Mr. Plasse confidently asserts that the bill from the hospital would be "the City's obligation because he was in their custody under arrest for possession of a Weapon [sic]," Response to OTSC at 22. But Mr. Plasse admitted that he "didn't do any research" into the issue before accepting the City's $25,000 settlement offer on his client's behalf. May 19 Tr. at 23:13–20. He also cites nothing to support that proposition now, save his own professed certainty about the billing and lien practices that apply when any person receives publicly funded medical care after an arrest. *See, e.g.*, Response to OTSC at 22 (asking rhetorically, and without citation, "Ever wonder why when an arrestee is injured he is sent to a City hospital? Because the City picks up the medical expenses of all its arrestees.").

In *Sullivan v. County of Suffolk*, however, a plaintiff brought a § 1983 action against the County of Suffolk and other defendants after a police officer shot him in the back while attempting to apprehend him. 1 F. Supp. 2d 186, 188 (E.D.N.Y. 1998); *see also* Compl. at 4–5, *Sullivan v. Cnty. of Suffolk*, 95-cv-1533 (E.D.N.Y. Apr. 18, 1995), ECF No. 1. The parties settled the case, and the court later adjudicated a dispute over a Medicaid lien that the Suffolk County Department of Social Services filed for plaintiff's medical assistance since his injury. *Sullivan v. Cnty. of Suffolk*, 1 F. Supp. 2d at 188. That a Medicaid lien existed under such a similar fact pattern

44

indicates that, regardless of whether any liens could be asserted against Plaintiff, Mr. Plasse should have conducted legal and factual research and discussed the issue with Plaintiff before entering the settlement.  That is particularly true because Mr. Plasse could have ascertained whether any Medicaid or other Cash Assistance lien existed against Plaintiff by filling out a short form.  *Liens Amount Form*, NYC Human Resources Administration, https://www.nyc.gov/site/hra/help/program-integrity-liens-form.page (last visited Mar. 12, 2024).  His failure to do so constitutes a lack of diligence that deprived Plaintiff of making an informed decision regarding the settlement.

The Court would thus be within its discretion to sanction Mr. Plasse pursuant to its inherent power.  Moreover, because these actions involved "misconduct that [was] not undertaken for the client's benefit, the [] court need not find bad faith before imposing a sanction under its inherent power."  *Seltzer*, 227 F.3d at 42.  The Court recognizes, however, that it is already sanctioning Mr. Plasse for other misconduct in this same case under Rule 11.  And while "prejudice is not required for sanctions under . . . the Court's inherent power," *Wisser v. Vox Media, Inc.*, No. 19-cv-1445, 2020 WL 1547381, at *7 (S.D.N.Y. Apr. 1, 2020), the Court also notes that it has already addressed any potential prejudice that may have arisen from Mr. Plasse's failure to provide his client with an approximation of costs to be deducted from the settlement proceeds, and to research or otherwise inquire into possible liens against Plaintiff's settlement award, by vacating the stipulations of settlement.  Therefore, and because its "inherent power 'must be exercised with restraint and discretion,'" *Verint Sys., Ltd.*, 991 F.3d at 368, the Court declines to sanction Mr. Plasse for his failure to

adequately investigate and inform Plaintiff regarding the settlement.

## IV.    Conclusion

For the foregoing reasons, the Court finds that Mr. Plasse violated Rule 11(b)(3) of the Federal Rules of Civil Procedure in his written submissions to the Court dated May 3, 2023 and May 5, 2023.  Pursuant to Rule 11(c)(4), Mr. Plasse is ORDERED to pay a penalty to the Court in the form of $1,000, payable to the Clerk of Court.

SO ORDERED.

_/s/ NRM_
NINA R. MORRISON
United States District Judge

Dated: March 18, 2024
        Brooklyn, New York